649 P.2d 997

**In re the Marriage of Bertha O. LEE, Petitioner-Appellee,**

**v.**

**C. Loran LEE, Respondent-Appellant.**

**No. 1 CA–CIV 4737.**

Court of Appeals of Arizona,
Division 1,
Department A.

Aug. 10, 1982.

Mitchell, Jensen & Timbanard, P. C. by Sheldon Mitchell, Phoenix, for petitioner-appellee.

Thomas F. Dasse, Phoenix, on brief, Marvin Johnson, P. C. by John P. Otto, Phoenix, on argument, for respondent-appellant.

**120**

OPINION

JAMES MOELLER, Judge.

This appeal is brought by respondent-appellant C. Loran Lee from a judgment and decree in dissolution of marriage granted to petitioner-appellee Bertha O. Lee. Appellant's counsel on appeal (different than trial counsel) contests several aspects of the trial court's division of community property, certain attorney's fee awards, and the disposition of one alleged community debt. In reviewing the evidence, we are constrained to resolve all doubts and inconsistencies in favor of supporting the trial court's actions. *Wayt v. Wayt,* 123 Ariz. 444, 600 P.2d 748 (1979); *Nelson v. Nelson,* 114 Ariz. 369, 560 P.2d 1276 (1977).

Viewed in this manner, the facts material to a resolution of this case are as follows. The parties were married in 1960, at which time appellant owned certain property located on Southern Avenue in Mesa, Arizona. In 1966 appellant deeded an undivided one-half interest in that tract to his wife. In 1968 the parties borrowed $10,000.00 from appellee's mother, Mrs. Craig, giving in return a note, mortgage and deed covering the Southern Avenue property. Although Mrs. Craig executed a satisfaction of the mortgage and returned the deed in 1974, both she and appellee assert that the debt itself was never forgiven. On the other hand, appellant testified the satisfaction was evidence that the obligation had been excused. In 1974 the parties purchased the assets and name of then bankrupt Blair College, relocating the medical/dental assistant training school to the Southern Avenue property in Mesa. During 1978, the parties acquired, as joint tenants, another parcel of land along Baseline Road in Mesa.

After extended proceedings, the trial court rendered a comprehensive judgment of dissolution which, among other things, made complete disposition of the community assets and liabilities. The Southern Avenue property was ordered sold for not less than $400,000.00, the net proceeds to be divided equally between the parties. Blair College was assigned a valuation of $60,-000.00 and was awarded to the appellant, while the Baseline Road property, valued at $46,500.00, was awarded to appellee. The court also ordered that Mrs. Craig be paid $7,186.00 directly from the proceeds of the Southern Avenue property sale in satisfaction of the disputed debt to her. After denial of appellant's motion for a new trial, he appealed.

To resolve one of the issues presented in this appeal, it is necessary to describe certain proceedings which occurred *after* the trial court's ruling on the community property. The record shows that appellant attempted, in several ways, to cloud title to the Southern Avenue property so that it could not be sold as had been ordered. Appellee was forced to request the trial court to hold appellant in contempt of its order to sell the property. As part of his efforts to frustrate the court's order, appellant also brought a separate action claiming that appellee had agreed, several years before, to convey the Southern Avenue property to him in the event the parties divorced or separated. This claim by appellant was a new one and was completely contrary to his position throughout the dissolution proceedings. Upon appellee's motion, the trial court found Mr. Lee's actions to be in violation of the court's order to sell the property, quashed the *lis pendens* filed by him, ordered him to dismiss the separate action within forty-eight hours, and awarded appellee $1,000.00 in attorney's fees resulting from his actions. Appellant did not comply with the order to dismiss the separate action at that time. Instead, he brought a special action in the Arizona Supreme Court, requesting a stay of the trial court's order. When the special action failed, he dismissed the separate action. The trial court again found appellant in contempt of court and awarded appellee an additional $3,000.00 in attorney's fees incurred by her as a result of appellant's actions. Both awards of attorney's fees occurred *after* appellant filed his notice of appeal from the dissolution decree which is now before us. Although the issue of these orders for attorney's fees therefore could not have been

and was not raised in his notice of appeal, appellant has presented arguments contesting the awards in his brief and in oral argument.

## THE SOUTHERN AVENUE PROPERTY

Appellant initially argues that the trial court lacked "jurisdiction" to order a sale of the Southern Avenue property because the land was capable of partition in kind. This issue was never litigated below and is raised for the first time on appeal. Indeed, appellant's argument on appeal is somewhat inconsistent with his position at trial, when he himself urged the trial court to order the sale of the property and division of the proceeds in the event the court declined his primary request to partition the property.

However, it is not inappropriate for this court to consider jurisdictional questions not raised at trial. See *Gage v. Gage*, 11 Ariz.App. 76, 462 P.2d 93 (1969). Appellant contends that a trial court is duty bound to order community property partitioned in kind if at all possible, with the sale of such property and division of proceeds being a second alternative available only where partition is impossible. In support of this theory he cites *Davis v. Davis*, 82 Idaho 351, 353 P.2d 1079 (1960), and *Hailey v. Hailey*, 160 Tex. 372, 331 S.W.2d 299 (1960). In both of these cases, the trial courts were statutorily bound to divide the community property only as they saw "just" or "right." Each case does appear to suggest, under such a standard, that the first appropriate course of action is partition in kind where possible. However, due to the express language of the governing Arizona statute, we feel the rule is otherwise in Arizona.

The operative portion of our statute provides that the trial court "shall also divide the community, joint tenancy and other property held in common equitably, *though not necessarily in kind*, without regard to marital misconduct." A.R.S. § 25–318(A) (emphasis added). Unlike the statutes involved in *Davis* and *Hailey*, our statute specifically provides that the distribution does not have to be "in kind." In Arizona, the apportionment of community property in a dissolution proceeding rests within the sound discretion of the trial court. *Neal v. Neal*, 116 Ariz. 590, 570 P.2d 758 (1977); *Hatch v. Hatch*, 113 Ariz. 130, 547 P.2d 1044 (1976). The trial court's broad discretionary powers include the power to order a sale of community property when it will facilitate the equitable division of the property. Even under an earlier version of our present § 25–318, which authorized the court to divide community property as "seems just and right", the power to order a sale of community property was employed. See *Hanner v. Hanner*, 95 Ariz. 191, 388 P.2d 239 (1964); *Hayne v. Hayne*, 9 Ariz.App. 99, 449 P.2d 633 (1969). The only inherent limitation on the power of the trial court to apportion community property is that the division, in the final analysis, must result in a substantially equal distribution which neither rewards nor punishes either party. *Hatch v. Hatch, supra.*

It being clear that the trial court had authority to order a sale of the Southern Avenue property, we now turn to appellant's alternative contention that, in this particular case, the order constituted an abuse of discretion. As noted, trial courts have very broad discretion in allocating and dividing community assets. R. Veldon Naylor, an appraiser called by appellee, testified that the Southern Avenue property could be partitioned equally in kind. He also testified, however, that should the property be sold it would be most profitable to sell it as a single parcel. Conversely, Robert Temple, another appraiser called by appellee, testified that the property would be most profitably disposed of by selling it in five or six lots. In light of the conflicting testimony as to the possible dispositions of the Southern Avenue property, we see no abuse of discretion by the trial court in deciding to order its sale as a single parcel for not less than $400,000.00, with the net proceeds to be divided equally.

## BLAIR COLLEGE

Appellant's alternative contention that the order for sale of the Southern

Avenue property resulted in an inequitable distribution of community assets is similarly unpersuasive. The inequity which springs from the sale, appellant claims, is the forced relocation of Blair College and a concomitant drastic diminution in its value, as opposed to the valuation actually given Blair College by the trial court. In short, because the college must be moved, appellant claims it is not worth nearly the value assigned to it when it was awarded to him by the trial court.

We first note that the record does not necessarily support appellant's assumption that a sale of the Southern Avenue property necessarily compelled a relocation of Blair College. As appellee points out, appellant could have purchased the property at the court-ordered sale, thus negating any relocation of the school. If, as appellant claims, he lacked the funds necessary to make this purchase, he still might have negotiated a lease for Blair College from a new buyer of the property. Appellant's present argument that any new purchaser would want to develop the property commercially, rather than receive rent from Blair College, is sheer speculation unsupported by the record. Thus, it does not necessarily follow that a sale of the Southern Avenue property automatically compelled a relocation of Blair College.

Even assuming a need to relocate the college, however, appellant has failed to demonstrate that the trial court erred in assigning a $60,000.00 value to the college. The expert witness who testified on this issue was Walter Pocock. He had difficulty coming up with a definitive appraisal of Blair College for several reasons. Foremost among these reasons was the unusual manner in which Mr. Lee conducted the business of the college, the inadequacy and inaccuracy of the records maintained by him both before and after the institution of this suit, and his repeated frustration of the discovery procedures instituted by Mrs. Lee and her counsel. However, after employing an accountant to develop reconstructed statements for the business, Pocock estimated the value of the college, as a going business, at $144,000.00. While this valua-

tion appears to have been based primarily upon the assumption that the business would remain on the Southern Avenue property, Pocock also concluded that the business was easier than most to move. It had been moved to the Southern Avenue property itself in 1974. While no formal appraisal of the college was prepared on the assumption that the business would be relocated, there was evidence before the trial court which, when taken with the totality of evidence before the court, indicates that the college had a value of at least $60,000.00, even assuming the necessity of a relocation. When the trial court ultimately awarded the college to appellant, this minimum valuation of $60,000.00 was assigned to it.

In the final analysis, appellant's claim that the $60,000.00 valuation of the college was error resolves itself into a claim that the trial court was required to accept Mr. Lee's stated opinion that the value of the college would be totally destroyed by a relocation. There being conflicting evidence in the record on the issue of valuation, we hold that appellant has failed to demonstrate any error or inequity by the trial court's assignment of a value of $60,000.00.

## THE BASELINE PROPERTY

■ Appellant next challenges the trial court's valuation of the Baseline Road property. It was awarded to appellee at an assigned valuation of $46,500.00. This valuation was arrived at by the formal appraisal of R. Veldon Naylor, who, at appellant's request, prepared an appraisal of the property several months prior to trial. Shortly before trial Naylor reexamined the Baseline property, again at appellant's request. Although he prepared no revised formal written appraisal, Naylor did offer his oral opinion at trial that the property had appreciated somewhat since his earlier appraisal. The source and validity of this later opinion were vigorously explored on cross-examination.

Viewing the evidence most favorably to upholding the trial court's judgment, as we

must, we believe it was clearly within the province of the trial court to base its valuation on the formal appraisal which was in evidence. The determination of issues of credibility and the resolution of conflicting evidence, including evidence from the same witness, are properly functions of the trial court. *See Day v. Day*, 20 Ariz.App. 472, 513 P.2d 1355 (1973). There being substantial competent evidence to support the trial court's valuation of the Baseline property, we will not disturb it on appeal.

## THE CRAIG DEBT

Appellant's next argument, which contests the validity of the court-ordered payment of the Craig debt, presents a question which we believe is one of first impression in Arizona. The court's judgment provided that Mrs. Craig (Mrs. Lee's mother) be paid $7,186.00 directly out of the proceeds of the Southern Avenue property sale. As previously noted, the parties to this litigation did not agree on the validity of this debt. Mr. Lee contended that the indebtedness had been forgiven and that this was evidenced by the satisfaction of mortgage that had admittedly been executed and delivered by Mrs. Craig. While Mrs. Craig was not a party to these proceedings, she testified that the satisfaction had been executed and delivered only because Mr. Lee told her it would immunize her against large street assessments, and that the debt remained unsatisfied.

It is clear that the trial court not only determined the Craig debt to be valid, but ordered the direct transfer of community assets to Mrs. Craig in full payment of the alleged balance due. However, as noted, Mrs. Craig did not intervene in the action below, nor was she ordered joined as a party by the trial court pursuant to its authority under A.R.S. § 25–314(D). Appellant maintains that the trial court lacked jurisdiction to order a direct payment of the contested debt, at least in the absence of Mrs. Craig's participation as a party in the trial. We agree.

The trial court is invested with authority to equitably divide the community assets in a proceeding for dissolution of marriage. A.R.S. § 25–318(A). Pursuant to this authority, a court may properly allocate community liabilities between the parties in effecting an equitable division of all community property. *Spector v. Spector*, 17 Ariz.App. 221, 496 P.2d 864 (1972). Appellant contends that a trial court may not directly transfer community assets to a stranger to the litigation in payment of a contested debt. Conversely, appellee argues that the ordered payment was no more than a permissible allocation of a community liability by the court. Both parties cite *Srock v. Srock*, 11 Ariz.App. 483, 466 P.2d 34 (1970), as supportive authority.

In *Srock*, the court allocated a particular community debt to the husband for payment. The wife paid the debt first, however, and then filed a petition to show cause why the husband should not be forced to reimburse her. The court entered judgment for the wife and the husband appealed. In affirming the propriety of granting a separate money judgment to the ex-spouse in order to compel the payment of an already allocated debt, Division Two of this court held:

> We particularly are compelled to affirm the trial court's discretion to allocate community liabilities because to do otherwise would nullify divorce effectiveness. If the debts already owed by the community, as distinct from the wife's attorneys fees, cannot be allocated between the parties then an essential item of divorce dispute remains unresolved. *We do not mean to say that allocating community liabilities to one party can bind that party to a creditor for a certain amount, or that the creditor, not being a party to the action, is bound to a certain amount. All the decree does effectively is put the responsibility for community debts on one party, whatever that liability might be.* Ultimately, the responsibility to so pay cannot be enforced by contempt, as is alimony, but can only be enforced as any other action in debt. . . .

11 Ariz.App. at 484–85, 466 P.2d at 35–36 (emphasis added). In our view, *Srock* is not

authority for the proposition that a court may order direct payment of contested community debts from community assets in a dissolution proceeding. *Srock* merely says that a court may allocate existing community debts between the parties, and that one ex-spouse may then seek payment of the obligation through a separate equitable proceeding or an action on the debt. The court expressly recognized that it could not order debt payment to a third party and compel such payment through contempt in a dissolution decree. In the present case we do not have an attempt, as in *Srock*, by one ex-spouse to enforce a court-ordered allocation of a mutually incurred debt. Rather, the court below sought to extinguish a contested debt to a third party by paying it directly out of community funds. This it was not empowered to do.

■ *Srock* suggests, and we agree, that the proper procedure in a case such as this, involving a non-intervening and non-joined creditor, is for the trial court to clearly allocate responsibility for the community obligations between each of the parties. Such an allocation is not to be considered a determination of validity or invalidity of the alleged debts insofar as a non-party creditor is concerned. Similarly, the court may not effectively validate and discharge a contested debt by ordering the direct transfer of community assets to a non-party creditor, or by ordering one party to pay the debt directly under pain of contempt. The allocation of community liabilities determines the rights and obligations of parties before the court only with respect to each other.

We believe the foregoing rule to be consistent with *Srock* as well as with the due process rights both of parties to a dissolution proceeding and non-party creditors. Additionally, we believe it is sound policy to adopt a rule which will not require creditors to intervene in contested dissolution actions in order to litigate their claims. To do otherwise would be to turn a dissolution action into a creditor's proceeding.

Furthermore, we note that the court-ordered payment of one contested community debt to a non-party could have serious adverse effects upon other non-party creditors. If the net community assets are insufficient to pay all valid debts, the compelled payment of one could operate as a preference. In a dissolution case invalidating a court-ordered sale of land and distribution of proceeds to creditors, the Washington Supreme Court has stated:

> Nothing can be found in the divorce act authorizing the court to deprive the spouses of their rights to prefer creditors, claim exemptions and/or homesteads, compromise claims, take bankruptcy, invoke statutes of limitation, make contracts, and enjoy their property rights.

*Arneson v. Arneson*, 38 Wash.2d 99, 101, 227 P.2d 1016, 1017–18 (1951). Similarly, there is nothing in the Arizona dissolution statutes which grants such power to a trial court. We therefore conclude that the trial court acted in excess of its jurisdiction when it went beyond the mere allocation of a contested debt and ordered direct payment to a non-party creditor from the proceeds of the sale of community property.

## ATTORNEY'S FEES

Lastly, appellant contests the trial court's award of approximately $4,000.00 in attorney's fees to appellee. As previously noted, both challenged awards were made after appellant filed his notice of appeal.

■ The court of appeals acquires no jurisdiction to review matters not contained in the notice of appeal. *China Doll Restaurant, Inc. v. Schweiger*, 119 Ariz. 315, 580 P.2d 776 (App.1978); *Rexing v. Rexing*, 11 Ariz.App. 285, 464 P.2d 356 (1970). In the absence of a timely notice of appeal following entry of the order sought to be appealed, we are without jurisdiction to determine the propriety of the order sought to be appealed.

■ Appellant asserts, however, that since the trial court lacked subject matter jurisdiction to make the fee awards, he may raise the issue at any time. His argument is that the disputed awards were, in reality, for fees incurred in separate proceedings.

However, those proceedings were found to be in contempt of court orders in *this* case, and the fees were awarded in *this* case. The subject matter jurisdiction of a court is its " ' "power to deal with the general abstract question" ' " presented. *Arizona Public Service Co. v. Southern Union Gas Co.*, 76 Ariz. 373, 381, 265 P.2d 435, 441 (1954). " ' "Jurisdiction over the subject matter" is the right of the court to exercise judicial power over that class of cases; . . . . By "jurisdiction over the subject matter" is meant the nature of the cause of action and, of the relief sought; and this is conferred by the sovereign authority which organizes the court. . . . ' " *Tube City Mining and Milling Co. v. Otterson*, 16 Ariz. 305, 312–13, 146 P. 203, 206 (1914). Simply put, appellant seeks to appeal the propriety of an award of attorney's fees in a dissolution proceeding. A trial court obviously has jurisdiction to order attorney's fees in dissolution cases. A.R.S. §§ 25–311(A); 25–324. Therefore, his argument that this court should consider the issue notwithstanding his failure to appeal therefrom must fail.

### CONCLUSION

The trial court had jurisdiction to order the sale of the Southern Avenue property and the order was not an abuse of discretion. The trial court's valuations of Blair College and the Baseline property were supported by the evidence, were not abuses of discretion, and did not result in an inequitable distribution of community assets. We have no jurisdiction to review the propriety of attorney's fees awarded after the filing of the notice of appeal herein.

Due to our conclusion that the trial court lacked authority to order direct payment of the contested Craig debt from community assets, we must remand this case. Since we do not know what has in fact transpired relative to the contested Craig debt, we remand this case for further proceedings consistent with this opinion.

Affirmed in part; reversed and remanded in part.

CONTRERAS and OGG, JJ., concurring.

NOTE: The Honorable JAMES MOELLER, Maricopa County Superior Court Judge, was authorized to participate by the Chief Justice of the Arizona Supreme Court pursuant to Arizona Const. art. VI, § 3.