787 P.2d 132

**MID KANSAS FEDERAL SAVINGS AND LOAN ASSOCIATION OF WICH-ITA, a corporation organized and existing under the laws of the United States of America, Plaintiff–Appellee,**

v.

**DYNAMIC DEVELOPMENT CORPO-RATION, an Arizona corporation, Defendant–Appellant.**

**1 CA–CV 88–310.**

Court of Appeals of Arizona,
Division 1, Department C.

Nov. 2, 1989.

Petition for Review Granted
Feb. 26, 1990.

Apker, Apker & Kurtz, P.C. by David B. Apker, Phoenix, for plaintiff-appellee.

Laird & Schneck, P.C. by Mitchell C. Laird, Douglas H. Cook and Jerry Steele, Phoenix, for defendant-appellant.

**OPINION**

EUBANK, Presiding Judge.

We consider whether Arizona's anti-deficiency statute for deeds of trust, A.R.S. § 33–814(E) (now § 33–814(F) (Supp.1988)), protects a residential housing developer from a deficiency judgment on the construction loans that it received from the lender. The trial court granted the lender, Mid Kansas, summary judgment against the borrower, Dynamic. We reverse, holding that Mid Kansas could not sue Dynamic because of the anti-deficiency statute, A.R.S. § 33–814(E).

Following the briefing of this appeal and prior to oral argument, our supreme

court's opinion in *Baker v. Gardner*, 160 Ariz. 98, 770 P.2d 766 (1988) was filed. At oral argument, we requested supplemental briefs on *Baker*. Counsel have filed supplemental briefs, which we have considered.

## FACTS

Dynamic Development Corporation (Dynamic) owned ten lots in the Kingswood subdivision of Prescott, Arizona. In May 1985 Mid Kansas Federal Savings and Loan Association of Wichita (Mid Kansas) lent Dynamic a total of $803,250 for the purpose of constructing ten houses on the lots. In exchange Dynamic executed ten separate construction notes, each secured by a first deed of trust on each one of the ten lots. In January 1986 Mid Kansas lent Dynamic an additional $150,000 to complete the construction of seven houses that had not already been sold. In exchange, Dynamic executed one construction note secured by a second blanket deed of trust on all remaining seven lots. Thereafter, Dynamic defaulted on the loans for five houses that had not yet been sold.

Mid Kansas noticed a trustee's sale under the second blanket deed of trust on the five houses. During the pendency of the trustee's sale, one of the five houses was sold. At the trustee's sale, Mid Kansas bought the four remaining houses for $101,986.67, which was the balance due on the underlying construction note.

Thereafter, Mid Kansas filed suit against Dynamic and its owners, Darrell and Paula Smith. In the claims that are the subject of this appeal, Mid Kansas sought to recover $425,250 plus interest due on the four construction notes, electing not to foreclose on its first-position deeds of trust. Mid Kansas also filed claims of constructive trust, unjust enrichment, conversion, breach of contract, and punitive damages, based on Mid Kansas' allegation that Dynamic had removed fixtures from the houses purchased with construction funds.

The trial court granted Mid Kansas' motion for partial summary judgment on the four construction notes and entered judgment for Mid Kansas, pursuant to Rule 54(b), Arizona Rules of Civil Procedure, stating:

> The Court has considered these theories and finds they should not preclude summary judgment on the claims of Plaintiff on the four notes and that there are no material issues of fact precluding summary judgment and that under the holding of *Southwest Savings and Loan v. Ludi*, 122 Ariz. 226 [594 P.2d 92], Plaintiff can maintain an action on these notes notwithstanding there was a Trustee's Sale instituted by Plaintiff on a separate deed of trust involving the subject properties.

In reversing the trial court, we must address the two primary arguments made on appeal by Mid Kansas, the appellee:

(1) A.R.S. § 33–814(E) did not apply because Mid Kansas was not suing to recover a deficiency; and

(2) A.R.S. § 33–814(E) did not apply because Dynamic was a developer, not a homeowner.

However, first we review Arizona's two anti-deficiency statutes.

## ARIZONA'S ANTI–DEFICIENCY STATUTES

In this opinion, we interpret the anti-deficiency statute governing deeds of trust, A.R.S. § 33–814(E), (now A.R.S. § 33–814(F)). This statute provides that if certain residential trust property is sold pursuant to a trustee's power of sale, then no action may be maintained to recover a deficiency:

> If trust property of two and one-half acres or less which is limited to and utilized for either a single one-family or a single two-family dwelling is sold pursuant to the trustee's power of sale, no action may be maintained to recover any difference between the amount obtained by sale and the amount of the indebtedness and any interest, costs and expenses.

Arizona's other anti-deficiency statute, A.R.S. § 33–729(A), provides that if a purchase money mortgage on certain residential property is foreclosed, no action

may be maintained to recover the deficiency:

> [I]f a mortgage is given to secure the payment of the balance of the purchase price, or to secure a loan to pay all or part of the purchase price, of a parcel of real property of two and one-half acres or less which is limited to and utilized for either a single one-family or single two-family dwelling, the lien of judgment in an action to foreclose such mortgage shall not extend to any other property of the judgment debtor, nor may general execution be issued against the judgment debtor to enforce such judgment, and if the proceeds of the mortgaged real property sold under special execution are insufficient to satisfy the judgment, the judgment may not otherwise be satisfied out of other property of the judgment debtor, notwithstanding any agreement to the contrary.

In interpreting A.R.S. § 33–814(E), we refer to cases interpreting both statutes. We assume that the legislature had the same intent in enacting both of these statutes, since they both apply to similar residential property and were enacted at the same time. *See Baker v. Gardner,* 160 Ariz. at 101, 770 P.2d at 769.

### (1) MID KANSAS WAS SUING ON A DEFICIENCY, WITHIN THE MEANING OF A.R.S. § 33–814(E)

Mid Kansas' first argument on appeal is that it was not suing to recover a deficiency, within the meaning of A.R.S. § 33–814(E), because there were multiple deeds of trust. Mid Kansas argues in particular that it could foreclose under the second blanket deed of trust and still elect to sue on the first construction notes.

This argument was rejected by the supreme court in *Baker.* The facts are that the Bakers sold their house to the Gardners. The Gardners gave a commercial lender a promissory note secured by a first deed of trust to finance most of the purchase price. Then they gave the Bakers a note secured by a second deed of trust to finance the balance of the purchase price. The Gardners defaulted on both notes. Af-

ter the commercial lender noticed a trustee's sale, the Bakers elected to waive their second deed of trust and to sue on the unpaid balance of their note under A.R.S. § 33–722:

> If separate actions are brought on the debt and to foreclose the mortgage given to secure it, the plaintiff shall elect which to prosecute and the other shall be dismissed.

The Arizona Supreme Court held that the Bakers could not sue on the note because the trust property was described in A.R.S. § 33–814(E). The court noted that the legislative history of A.R.S. § 33–729(A), the anti-deficiency statute for purchase money mortgages, demonstrated that "the purpose of this bill is to protect the homeowners from deficiency judgments." (Quoting Minutes of Meeting, Arizona House of Representatives' Committee on Ways and Means, March 31, 1971 at p. 2.) The court found that the purpose of Arizona's anti-deficiency statutes was similar to the purpose of California's anti-deficiency statute, Cal.Civ.Proc.Code § 580b (West 1976), and quoted the California Supreme Court's statement that the purpose of California's anti-deficiency statute was to discourage the sale of overvalued land by placing the risk of inadequate security on the lender. (Quoting *Spangler v. Memel,* 7 Cal.3d 603, 612, 498 P.2d 1055, 1060, 102 Cal.Rptr. 807, 812 (1972)). The supreme court in *Baker* also quoted the North Carolina Supreme Court's statement that its anti-deficiency statute should be construed more broadly, not just literally, in order to prevent a lender from electing to waive the security. (Quoting *Ross Realty v. First Citizens Bank & Trust,* 296 N.C. 366, 250 S.E.2d 271 (1979)). The court in *Baker* concluded that "the legislature's objective in enacting § 33–814(E) was to abolish the personal liability of those who give trust deeds encumbering properties of two and one-half acres or less and used for single-family or two-family dwellings." 160 Ariz. at 104, 770 P.2d at 772.

Mid Kansas relies on *Southwest Sav. and Loan v. Ludi,* 122 Ariz. 226, 594 P.2d 92 (1979). In *Ludi* the lender foreclosed on

its first mortgage, waived the second mortgage, and sued on the second promissory note. 122 Ariz. at 227, 594 P.2d at 93. The supreme court held that the borrower was not protected against a deficiency judgment by A.R.S. § 33–729(A) because the second mortgage was not for a purchase money mortgage but a property improvement loan. *Id.* at 228, 594 P.2d at 94. The court reasoned in part that since the lender had a cause of action against [the borrower] for both mortgages and notes, it could have foreclosed the first mortgage and still have sued at law on the second note without violating [A.R.S. § 33–729(A)], as the second action would not be a deficiency judgment based on the first mortgage but a wholly independent action on the second note alone. 122 Ariz. at 228, 594 P.2d at 94.

Nothing in *Baker* suggests a retreat from the supreme court's position in *Ludi.* In fact, the *Baker* majority cited *Ludi,* stating a "creditor/beneficiary can still elect to sue on the note in all cases except those involving the particular mortgages and deeds of trust described in the anti-deficiency statutes." 160 Ariz. at 104, 770 P.2d at 772.

When this statement is considered together with the supplemental opinion in *Baker,* a further question arises, which the parties have addressed in their supplemental briefs: Can Mid Kansas elect to waive the first-position deeds of trust and sue on the notes because the trust deeds were not given to secure payment of the purchase price of the property within the meaning of A.R.S. section 33–729(A)?

Dynamic's first response to this argument is that Mid Kansas could not make that election because Mid Kansas already chose non-judicial foreclosure on the second-position deed of trust.

In considering Mid Kansas' argument, we must interpret the court's distinction in *Baker* between a lender's remedies under Arizona's two anti-deficiency statutes. The court stated that if a lender chose the advantages of a non-judicial foreclosure under A.R.S. § 33–814(E), then the lender

could not obtain a deficiency judgment on any security:

> The creditor who holds a deed of trust on the described type of residential property and who chooses the advantages of non-judicial foreclosure cannot obtain a deficiency judgment even if he is not dealing with purchase money collateral.

160 Ariz. at 106, 770 P.2d at 774. The court stated in distinction that if a lender could have chosen judicial foreclosure and obtained a deficiency judgment for non-purchase money security under A.R.S. § 33–729(A), then the lender could elect to waive that security and sue on the note:

> Where, however, the creditor chooses judicial foreclosure, he can obtain a deficiency judgment in all cases except those involving purchase money loans on the type of real property that the mortgage foreclosure statute describes. Therefore, where the creditor can obtain a deficiency judgment he can also elect to waive the security under A.R.S. § 33–722 and sue on the note.

160 Ariz. at 107, 770 P.2d at 775.

■ Applying this distinction, we agree with Dynamic that Mid Kansas could not sue on the construction notes. Having chosen the advantages of a non-judicial foreclosure of the second-position deed of trust, Mid Kansas could not now sue on the first-position construction notes. *See* Lawyer, *The Deed of Trust: Arizona's Alternative to the Real Property Mortgage,* 15 Ariz.L. Rev. 194, 195 (1973) (the two primary advantages to a lender of the deed of trust statutes are that the lender may choose a speedier, non-judicial foreclosure and the borrower has no redemption rights after the sale); *Patton v. First Fed.Sav. and Loan Ass'n,* 118 Ariz. 473, 477, 578 P.2d 152, 156 (1978) ("The Deed of Trust statutes thus strip borrowers of many of the protections available under a mortgage.")

Our analysis may have limited application because Mid Kansas was the only lender. We do not address whether one lender could elect to waive its non-purchase money security if another lender chose a non-judicial foreclosure of its security.

Dynamic's second response to Mid Kansas' argument is that Mid Kansas may not elect to waive the first-position deeds of trust because the deeds of trust were purchase money security within the meaning of A.R.S. § 33–729(A). Dynamic argues that the cost of the construction of the houses became part of the purchase price of the real property as the houses became part of the real property.

■ We disagree. The deeds of trust were given to secure payment for construction of the houses. They were not given to secure payment of the purchase price of the real property within the meaning of A.R.S. § 33–729(A). In *Ludi* the supreme court stated that a second mortgage given for a property improvement loan, not for the purchase price, "is clearly not covered" by A.R.S. § 33–729(A). *Ludi*, 122 Ariz. at 228, 594 P.2d at 94.

In its brief Dynamic raises a merger argument. Dynamic notes that the first deeds of trust contained a "dragnet clause," under which future advances made by Mid Kansas to Dynamic would be secured by the first deeds of trust. *See L.B. Nelson Corp. v. W. Am. Fin. Corp.*, 150 Ariz. 211, 722 P.2d 379 (App.1986); *Pearll v. Williams*, 146 Ariz. 203, 704 P.2d 1348 (App.1985); *Union Bank v. Wendland*, 54 Cal.App.3d 393, 126 Cal.Rptr. 549 (1976). Dynamic argues that Mid Kansas' second blanket deed of trust was, in effect, merged into its first deeds of trust. Thus, Dynamic concludes, no action for the deficiency could have been maintained.

Merger of mortgages or deeds of trust are described by Professor Powell as follows:

> The Doctrine of Merger. When one person obtains both a greater and a lesser land interest in the same property, without any intermediate interest existing in another person, a merger is said to occur. The lesser interest is extinguished. In the case of a mortgage this result occurs when the mortgagee's interest and the fee title are owned by the same person. There is a merger whenever the mortgagor transfers its equity of redemption to the mortgagee, as in the case of a settle-

> ment involving transfer of a deed to the property as a substitute for foreclosure, commonly called a "deed in lieu of foreclosure." Merger may also result when the mortgagee assigns his interest to the mortgagor. Similarly, a third person may obtain both the mortgagor's equity of redemption and the mortgagee's interest.

> The doctrine of merger arises from the fact that normally there is no purpose in separately recognizing two parts of the entire bundle of ownership rights when all of these rights are held by one owner. Accordingly, the law courts have followed the rule of extinction of the lesser right whenever the requisite facts are present. Equity, however, has never favored the rule of merger. If there is any advantage to be gained by continuing the independent existence of the rights, such independent existence will be maintained. This equitable exception to the doctrine of merger is explained as a product of "intent," actual or presumed. (Footnotes omitted).

3 *Powell on Real Property*, para. 459, 37–262 (1989). Our supreme court has held that termination by merger is a fact issue. *Bowman v. Cook*, 101 Ariz. 366, 419 P.2d 723 (1966). *Bowman* relied on *Hathaway v. Neal*, 31 Ariz. 155, 251 P. 173 (1926), where the court said:

> It is, of course, the general rule of law that, where the holder of a mortgage acquires the equity of redemption in mortgaged premises, a merger of the two estates results, vesting the mortgagee with the complete title and putting an end to his rights or title under the mortgage. [Citation.] This, however, is not true when a merger would work injury or violate well-established principles of equity, or be contrary to the intentions of the parties, and, primarily, of the mortgagee, who purchases the equity of redemption, and the presumption is, *in the absence of proof to the contrary*, that the mortgagee intended what would best accord with his interests. 31 Ariz. at p.

159, 251 P. at p. 174. (Emphasis supplied.)

101 Ariz. at 367–68, 419 P.2d at 724–25.

Thus, Dynamic's contention that the merger defense created a fact issue precluding summary judgment is well taken. However, because of our determination that A.R.S. § 33–814(E) precludes an action on the notes, we elect to rest our holding on § 33–814(E) and defer the merger issue until it is better briefed.

### (2) A.R.S. § 33–814(E) APPLIES TO DEVELOPERS AS WELL AS HOMEOWNERS

Mid Kansas' second argument is that the Arizona legislature did not intend Arizona's anti-deficiency statutes to protect developers, like Dynamic, from deficiency judgments. Mid Kansas cites no authority in support of this argument. The only authority cited by Dynamic is our decision in *Northern Ariz. Properties v. Pinetop Properties Group*, 151 Ariz. 9, 725 P.2d 501 (App.1986).

We note that the legislative history of A.R.S. § 33–729(A) supports Mid Kansas' argument. As explained to the legislature enacting A.R.S. § 33–729, the purpose of the bill was to protect the "homeowners" from deficiency judgments. *See Baker v. Gardner*, 160 Ariz. at 101, 770 P.2d at 769; *see also* Boyd & Balentine, *Arizona's Consumer Legislation: Winning the Battle But* . . . ., 14 Ariz.L.Rev. 627, 654 (1972) ("The most direct benefit of [A.R.S. § 33–729(A)] will be the elimination of hardships resulting to *consumers* who, when purchasing a home, fail to realize the extent to which they are subjecting assets besides the home to legal process") (emphasis added).

However, we conclude that A.R.S. § 33–814(E) protects developers as well as homeowners, based on the plain and unambiguous language of the statute: A.R.S. § 33–814(E) does not limit its application to homeowners. Where the language of a statute is plain and unambiguous, courts must follow the meaning of the statute as written. *State Farm Mut. Ins. Co. v.*

*Agency Rent–A–Car, Inc.*, 139 Ariz. 201, 203, 677 P.2d 1309, 1311 (App.1983). We note that the legislature could have easily limited the definition of trust property in A.R.S. § 33–814(E) to property owned by homeowners, but it did not. For example, the legislature defined trust property in A.R.S. § 33–806.01(D), which it enacted in the same bill with A.R.S. § 33–814(E), as property which was not used for commercial purposes:

> This section shall be applicable only to trust property of two and one-half acres or less *which is not used for commercial purposes* and which is limited to and utilized for dwelling units, not to exceed four single-family units.

Laws 1971, ch. 136, § 7 (emphasis added).

We reached a similar conclusion concerning A.R.S. § 33–729(A) in *Northern Arizona Properties v. Pinetop Properties Group*, 151 Ariz. 9, 725 P.2d 501 (App. 1986). In *Northern Arizona Properties* we held that a condominium, which was owned as an investment and rented to third parties, was a "dwelling" within the meaning of A.R.S. § 33–729(A). We reasoned that "[w]hile we agree with [the lender], that the legislature perhaps meant only to exclude deficiency judgments in foreclosure actions against a single family homeowner and not against an investment homeowner, the statute just does not say that." *Id.* at 12, 725 P.2d at 504. Similarly, we reason in this opinion, that while the legislature perhaps meant only to protect homeowners, not developers, A.R.S. § 33–814(E) "just does not say that." *Id.*

Apart from our decision in *Northern Arizona Properties*, Arizona courts have never considered whether the anti-deficiency statutes protect borrowers in commercial transactions. In *Baker*, our supreme court cited cases from California and North Carolina to support its interpretation of A.R.S. § 33–814(E). California courts have no need to address whether its anti-deficiency statute protects commercial borrowers (*see* Cal.Proc.Civ.Code § 580b), since its anti-deficiency statute expressly distinguishes between the protection afforded dwellings occupied by purchasers and the

more limited protection afforded all other real property. On the other hand, the North Carolina Supreme Court has held that absent contrary legislative intent, its anti-deficiency statute does protect commercial borrowers. *See* N.C.Gen.Stat. § 45–21.38 (1988). *Barnaby v. Boardman,* 313 N.C. 565, 330 S.E.2d 600 (1985). Thus, North Carolina's statutory scheme is closer to our statutory scheme and holding in *Northern Arizona Properties* than is the California statutory scheme, and we adopt the North Carolina court's conclusion.

Mid Kansas raises two other arguments, which are subsidiary to its primary argument that A.R.S. § 33–814(E) was not intended to protect developers. First, Mid Kansas argues that the four houses were not "utilized for ... a single one-family ... dwelling," within the meaning of A.R.S. § 33–814(E), because the construction was not complete at the time of the trustee's sale. Mid Kansas states that a dwelling means "a shelter (as a house or a building) in which people live." *Northern Arizona Properties,* 151 Ariz. at 12, 725 P.2d at 504 (quoting Webster's Ninth New Collegiate Dictionary (1976)).

Mid Kansas construes A.R.S. § 33–814(E) too literally. As stated in *Baker,* we construe the statute broadly in order to protect homeowners from deficiency judgments. *Baker,* 160 Ariz. at 101, 770 P.2d at 769. For example, if an individual purchased his home and defaulted before construction was completed, we would be required to construe A.R.S. § 33–814(E) broadly enough to protect that homeowner from a deficiency judgment. Mid Kansas suggests no method for distinguishing that homeowner from this developer, Dynamic.

Second, Mid Kansas argues that the four subdivided lots were not "trust property of two and one-half acres or less," within the meaning of A.R.S. § 33–814(E). Mid Kansas' construction is, once again, too literal. For example, if the four subdivided lots were owned not by this developer, Dynamic, but by four individual homeowners, we would construe A.R.S. § 33–814(E) broadly enough to protect those homeowners from deficiency judgments. *Baker* requires this

construction of the statute on behalf of Dynamic.

## DYNAMIC'S ARGUMENTS

Dynamic raises five other arguments for reversing the summary judgment, involving estoppel, unjust enrichment, election of remedies, Mid Kansas' admission, and sufficiency of the evidence. We do not find it necessary to address any of these arguments in this appeal.

## CONCLUSION

Mid Kansas requests sanctions for a frivolous appeal under Rule 25, Arizona Rules of Civil Appellate Procedure. We deny its request. We also deny both parties' request for attorney's fees on appeal.

While the majority agrees with Judge Brooks' merger argument, we preferred to base this opinion on A.R.S. § 33–814(E). We reverse the trial court's summary judgment and remand for further proceedings consistent with this opinion.

SHELLEY, J., concurs.

BROOKS, Judge, specially concurring.

I concur in the result reached by the majority, but would prefer to resolve this case according to principles of merger and extinguishment. In my opinion, that path is at once more defensible and more direct than the one taken by the majority. First, I am not persuaded that a residential developer may claim the statutory protection against deficiency judgments afforded to homeowners under *Baker v. Gardner.* Moreover, I am convinced that, under the peculiar facts of this case, to address any question regarding the application of *Baker* is to follow the proverbial red herring. I agree with the majority, however, that the issues involving merger and extinguishment have not been adequately presented or briefed in this case.

Nevertheless, I am unwilling to be distracted by questions concerning the nature of the property (*i.e.,* whether or not it is of a type described in the anti-deficiency statutes), the character of the debt (*i.e.,* whether purchase money or non-purchase mon-

ey), or the lienor's chosen method of foreclosure (*i.e.*, whether by trustee's power of sale or judicial process) because I do not believe that the answers to these questions are dispositive. What matters is that Mid Kansas was the only lender.

In reviewing a case that is almost identical on its facts to the one now before us, the Michigan Court of Appeals stated:

> At law, whenever a greater and lesser estate or a legal and equitable estate coincide in the same person, the lesser or equitable estate is destroyed by merger. Equity, however, will generally prevent a merger if the parties did not intend a merger, and an intent to avoid a merger will ordinarily be inferred where it is in the interest of the person holding the various estates to keep them separate. Plaintiff must look to equity here to prevent the merger which would be automatic at law.... [E]quity is of no assistance under the circumstances presented here, because plaintiff seeks to avoid a merger to enable it to obtain, in effect, a double recovery.

*Board of Trustees v. Ren–Cen Indoor Tennis & Racquet Club,* 145 Mich.App. 318, 325, 377 N.W.2d 432, 436 (1985) (citations omitted).

Mid Kansas, like the plaintiff in the case above, is attempting to obtain a double recovery. As the Michigan court observed, the price at a foreclosure sale is depressed in order to reflect outstanding prior liens. *Id.* The reason for this is illustrated by the instant case, where a third party who purchased the property at the trustee's sale would have to satisfy the debts secured by the first deeds of trust in order to prevent Mid Kansas from asserting its superior claim to the property. As the only lender, Mid Kansas must not be permitted to obtain the price advantage of purchasing at the second-position trustee's sale without the disadvantage of having to satisfy the debts secured by the first-position deeds of trust in order to obtain uninterrupted enjoyment of the property. *See also* Armstrong, *Two Deeds of Trust in the Same Hands: A Hobson's Choice of Foreclosure?,* 3 Arizona State Bar Corporate, Banking and Business Section Newsletter 15 (May 1989).

I would reverse the trial court's judgment and remand with instructions to enter judgment in favor of Dynamic.