877 P.2d 832

**PNL CREDIT L.P., a Texas limited partnership, Plaintiff–Appellant,**

v.

**SOUTHWEST PACIFIC INVESTMENTS, INC., an Arizona corporation; R. Gregory Orians and Constance S. Orians, husband and wife; James Ricketts, a single man, Defendants–Appellees.**

No. 1 CA–CV 91–0389.

Court of Appeals of Arizona, Division 1, Department E.

April 28, 1994.

Reconsideration Denied July 8, 1994.

Ridenour, Swenson, Cleare & Evans, P.C. by William G. Ridenour, Phoenix, for plaintiff-appellant.

David W. Curtis, Scottsdale, and Bruce W. Griffin, Phoenix, for defendants-appellees.

## OPINION

SKELLY, Judge [1].

PNL Credit L.P. ("PNL")[2] appeals from a grant of summary judgment in favor of Southwest Pacific Investments, Inc. ("SW Pacific"), R. Gregory Orians and Constance Orians ("the Orians"), and James Ricketts ("Ricketts").[3] PNL challenges the trial court's ruling that Arizona's anti-deficiency statute for deeds of trust, Ariz.Rev.Stat.Ann. ("A.R.S.") section 33–814(G) (Supp.1990), protects SW Pacific from a deficiency judgment. PNL also challenges the trial court's ruling that A.R.S. section 33–814(G) bars a deficiency action against loan guarantors, and that the loan guarantors in this case, the Orians and Ricketts, did not waive their available statutory defenses. For the reasons set forth herein, we reverse the trial court's rulings and judgment.

## I. FACTS

In late 1985, PNL's predecessor in interest, Comcal Mortgage Services, Inc., made a loan to SJM Arizona Development Corporation ("SJM"). The loan was executed through six promissory notes, but secured by a single blanket deed of trust encumbering six individual condominium units. In late 1986, PNL and SW Pacific entered into an Assumption Agreement, whereby SW Pacific assumed SJM's obligations. The Orians and Ricketts also executed separate guaranty agreements, each unconditionally guarantee-

ing the promissory notes, deed of trust, and Assumption Agreement up to the sum of $88,940. SW Pacific subsequently defaulted on its loan payments. PNL noticed a trustee's sale on the six condominium units. Prior to the trustee's sale, two of the units were sold to third parties. PNL purchased the remaining four units at the trustee's sale with a credit bid of $355,000. The outstanding debt at the time was $472,100.21. PNL thereafter filed this deficiency action.

## II. PROCEDURAL BACKGROUND

Because the Orians challenge the timeliness of the appeal and the issues that can be raised, we need to review the procedural history of this case. PNL moved for summary judgment against SW Pacific, the Orians and the Ricketts (collectively, the "Defendants"). The trial court granted the motion and entered judgment in favor of PNL. The Defendants filed a motion for a new trial, arguing that the holding in *Mid Kansas Fed. Sav. & Loan v. Dynamic Dev. Corp.*, 163 Ariz. 233, 787 P.2d 132 (App.1989), *vacated*, 167 Ariz. 122, 804 P.2d 1310 (1991), required a reversal of the judgment. The Defendants also argued that the trial court failed to make a finding that the bid price at the trustee's sale was the fair market value of the property. The trial court granted the motion only as to the effect of the *Mid Kansas* decision. The trial court then instructed the parties to file summary judgment motions addressing the applicability of the *Mid Kansas* holding.

In their motion, the Defendants argued that, according to the holding in the *Mid Kansas* case, A.R.S. section 33–814(G) protected them from a deficiency action. PNL argued that the anti-deficiency statute did not apply to the trust property in this case, that guarantors are not protected by that statute, and alternatively that the guarantors

---

**1.** Christopher M. Skelly, Judge of the Superior Court of Maricopa County, was authorized by the Chief Justice to participate in this appeal pursuant to Section 3 of Article VI of the Arizona Constitution.

**2.** During the pendency of this appeal, PNL assumed Community American Mortgage Corpora-

tion's ("CAMCO") interest in the action. For the sake of clarity, we are substituting PNL's name for CAMCO's.

**3.** The answering brief was filed on behalf of the Orians only.

waived any protection provided by the statute.

On July 30, 1990, the trial court granted the Defendants' motion for summary judgment. Around this time, the Arizona Supreme Court granted a petition for review in the *Mid Kansas* case. The trial court, therefore, directed the Defendants to prepare a formal written judgment which did not include the "no just reason for delay" language described in Rule 54(b), Arizona Rules of Civil Procedure. The trial court also directed the Defendants to file a motion to stay the case on the inactive calendar for one year pending the supreme court's ruling. However, the trial court later denied both sides' motions to continue and signed and filed the formal judgment on October 4, 1990.

In the judgment, the trial court granted the Defendants' motion for new trial and motion for summary judgment, finding that, pursuant to the court of appeals' *Mid Kansas* holding, the anti-deficiency statute barred a deficiency action against the Defendants. The judgment awarded costs and attorneys' fees to the Defendants, but did not contain Rule 54(b) language. It did, however, dispose of all parties and issues in the case. Both parties agree that it was a final appealable judgment.

On October 12, 1990, PNL filed a motion for new trial or to alter or amend the judgment pursuant to Rule 59, Arizona Rules of Civil Procedure. PNL alleged that it was not given sufficient time to respond to the Defendants' application for attorneys' fees and argued that amount awarded was unsupported. PNL also filed an objection to application for attorneys' fees and costs, making the same argument. Prior to a hearing on the motion, PNL filed an amended Rule 59 motion, additionally arguing that the trial court erred in relying on the court of appeals' *Mid Kansas* opinion, because the supreme court had accepted the petition for review. By an unsigned minute entry dated November 26, 1990, the trial court denied PNL's motion for new trial, but sustained its objection to the award of attorneys' fees, reducing the amount awarded. The trial court did not issue a formal written judgment or signed order.

The supreme court issued its opinion in *Mid Kansas* on January 10, 1991. *Mid Kansas*, 167 Ariz. 122, 804 P.2d 1310 (1991) (vacating the court of appeals decision). PNL filed a second motion for new trial on January 23, 1991, arguing that the trust property was not protected by the anti-deficiency statute because the condominiums were never occupied and, thus, they were not being "utilized as dwellings" as defined in *Mid Kansas*. PNL also argued that the condominiums were not "single one-family or single two-family dwellings." In response, the Defendants presented new evidence and argued that the condominiums were indeed being "utilized as dwellings." Following a hearing on March 25, 1991, the trial court denied PNL's latest motion for new trial in an unsigned minute entry.

On March 27, 1991, the trial court filed a signed modification of judgment, dated January 25, 1991, which repeated verbatim the judgment entered on October 4, 1990, except that it reduced the amount of attorneys' fees and costs awarded to the Defendants. On April 12, 1991, the trial court filed another modification of judgment which was identical to the document filed on March 27, 1991, except that it was dated April 12, 1991. Finally, on April 17, 1991, the trial court filed a signed order which denied PNL's second motion for new trial and stated that, under the supreme court's reasoning in *Mid Kansas*, the anti-deficiency statute precluded a deficiency judgment against the Defendants. PNL then filed a notice of appeal on May 13, 1991.

## III. DISCUSSION

### A. Jurisdiction

■ The Orians contend that the appeal is untimely and should be summarily dismissed. *See Lee v. Lee*, 133 Ariz. 118, 124, 649 P.2d 997, 1003 (App.1982) (failure to file a timely notice of appeal is jurisdictional). When a motion for new trial or to alter or amend the judgment is timely filed, the time to appeal is computed from the entry of an order granting or denying the motion. Ariz. R.Civ.App.P. 9(b). The time begins to run

when a signed written order is filed with the clerk of the superior court. *Id.*

 The Orians first argue that PNL's motion for new trial or to alter or amend judgment did not extend the time to appeal because it merely objected to the award of attorneys' fees and costs. The Orians claim that such an objection to an award of attorneys' fees should be made post-judgment pursuant to Rule 54(f), Arizona Rules of Civil Procedure, which deals with filing statements of cost. We disagree. In *Title Ins. Co. of Minn. v. Acumen Trading Co.*, 121 Ariz. 525, 526–27, 591 P.2d 1302, 1303–04 (1979), the Arizona Supreme Court held that an objection to a judgment's lack of attorneys' fees award needs to be made by a motion for new trial or motion to alter or amend the judgment. *See also Mark Lighting Fixture Co. v. General Elec. Supply Co.*, 155 Ariz. 27, 31–2, 745 P.2d 85, 89, 90 (1987). It stands to reason, then, that a post-judgment objection to the amount of attorneys' fees awarded should also be made by a motion for new trial or motion to amend the judgment.

 The Orians next argue that the time period began running on November 26, 1990, when the trial court denied PNL's motion for new trial making the May 13, 1991 notice of appeal untimely. PNL filed a timely motion for new trial or to alter or amend the judgment eight days after entry of the October 4, 1990 judgment. *See* Ariz.R.Civ.P. 59(d). PNL also timely filed an amended motion for new trial before the original motion was ruled on. *See* Ariz.R.Civ.P. 59(c)(1). On November 26, 1990, the trial court denied PNL's motion, except as to attorneys' fees. However, this ruling was made only in an unsigned minute entry and, therefore, did not constitute "entry of an order." Ariz. R.Civ.App.P. 9(b)(4). PNL's second motion for new trial, filed on January 23, 1991, was also timely because the trial court had not yet filed a signed order ruling on PNL's original motion. *See id.* We view the sec-

ond motion for a new trial as a second amendment to the original motion.

The first documents to be both signed and filed by the trial court after the October 4, 1990 judgment were the modifications of judgment. PNL states that the first signed document filed by the trial court subsequent to the October 4, 1990 judgment was the April 12, 1991 modification of judgment.[4] Both parties seem to be unaware of the existence of the modification of judgment filed on March 27, 1991. However, it is irrelevant that the parties may not have been notified of the filing of the March 27, 1991 modification because the lack of notice does not affect the time to appeal or relieve a party for failure to appeal within the time allowed. *See* Ariz.R.Civ.P. 77(g). Thus, if the filing of the modifications of judgment was to start the time for appeal, the time period would commence from the filing of the March 27 modification, making the May 13, 1991 notice of appeal untimely.

Notwithstanding the filing of the modifications, we find that the time to appeal did not start to run until the trial court filed the signed order on April 17, 1991, denying PNL's second motion for new trial and reducing the award of attorneys' fees and costs. It was not until the April 17, 1991 order that the trial court expressly ruled on all issues raised in PNL's motions for new trial and amendments. Therefore, we compute the time period from that date. PNL's notice of appeal, filed May 13, 1991, was timely.

 We turn next to which issues PNL has properly presented for appellate review. This court lacks jurisdiction to review matters not contained in the notice of appeal. *Lee*, 133 Ariz. at 124, 649 P.2d at 1003. The notice of appeal specified that it was being taken from the April 12, 1991 modification of judgment and the order denying the motion for new trial. The Orians argue that, because the appeal was not taken from the

---

4. The Orians also mention only the April 12, 1991 modification of judgment. Even the trial court seems to have overlooked the first modification of judgment. Its April 12, 1993 minute entry approves the modification signed by the court on that date. It appears that the trial court lost the first modification, and it somehow ended up getting filed without anyone knowing about it. The record contains a letter to the trial court from the Defendant's counsel stating that he is enclosing a new form of modification of judgment because the judge's office had informed him that the first form had been lost.

October 4, 1990 judgment, PNL cannot contest the applicability of the anti-deficiency statute. The Orians point out that the modification of judgment only reduced the attorneys' fees and costs awarded to the Defendants.

We note that the modification of judgment merely restated the October 4, 1990 judgment, except for reducing the award of attorneys' fees and costs. The modification discusses the anti-deficiency statute issue and does include the following ruling on the Defendants' summary judgment motion:

> Defendants' second Motion for Summary Judgment is granted, the Court finding that A.R.S. section 33–814, applies to the defaulting Southwest Pacific Investments, Inc., barring a deficiency lawsuit following the trustee sale on the four condominium units here at issue. The Court further finds that the statute also bars a lawsuit against the loan guarantors, R. Gregory Orians, Constance Orians, and James Ricketts.

Since the modification of judgment includes the trial court's findings and ruling on the Defendants' motion for summary judgment, PNL can raise the issues argued therein, including the applicability of the anti-deficiency statute. *See State v. Mecham*, 173 Ariz. 474, 477, 844 P.2d 641, 644 (App.1992). PNL also noticed its appeal from the trial court's order denying its motion for new trial and can raise the issues argued in the motions and amendments. *See Matcha v. Winn*, 131 Ariz. 115, 116, 638 P.2d 1361, 1362 (App.1981). The issues PNL argues on appeal have all been properly preserved.

## B. *Applicability of the Anti–Deficiency Statute*

■ PNL argues that the trust property encumbered by its deed of trust is not protected under the anti-deficiency statute because it consists of *four* condominium units and is thus not limited to a single one-family or a single two-family dwelling. We agree. That statute reads in relevant part:

> If trust property of two and one-half acres or less which is limited to and utilized for either a single one-family or a single two-family dwelling is sold pursuant to the trustee's power of sale, no action may be maintained to recover any difference between the amount obtained by sale and the amount of the indebtedness and any interest, costs and expenses.

A.R.S. section 33–814(G).

■ PNL's loan to SW Pacific's predecessor was secured by a single blanket deed of trust originally encumbering six separate condominium units.[5] At the time of the trustee's sale, four units remained encumbered by the deed of trust. Although the loan was evidenced by multiple promissory notes, A.R.S. section 33–814(G) focuses on the nature of the "trust property," not the number of underlying obligations. Courts generally must follow a statute's language when that language is plain and unambiguous. *Mid Kansas*, 167 Ariz. at 128, 804 P.2d at 1316. Thus, the anti-deficiency statute protects "trust property" that is "limited to and utilized" as "*single* one-family or *single* two-family dwellings."

The Orians claim that there were in effect four separate but concurrent trustee's sales.

5. In contrast to this case, in *Mid Kansas* the lender sought to waive its security and sue on four separate construction loans, each secured by four separate deeds of trust, and each encumbering a single substantially completed home. 167 Ariz. at 124–25, 804 P.2d at 1312–13. The lender had previously conducted a trustee's sale on a second-position blanket deed of trust on the four properties. *Id.* The borrower in *Mid Kansas* argued that the anti-deficiency statute prevented the lender from suing on the first-position notes after having non-judicially foreclosed the second-position blanket deed of trust. The supreme court held that the anti-deficiency statute did not apply because the uncompleted, unoccupied homes did not constitute "dwellings." *Id.* at 129, 804 P.2d at 1317. Because the court concluded that the borrower was not protected by the anti-deficiency statute, the court did not consider the issue of whether trust property consisting of multiple single-family homes falls within the protection of the anti-deficiency statute. In the court of appeals' *Mid Kansas* opinion, however, this court did reject the lender's argument that the four lots combined were not "trust property of two and one-half acres or less," stating that, if the four lots had been owned by four individual homeowners as opposed to the one developer, this court would construe the anti-deficiency statute broadly enough to protect the homeowners from deficiency judgments. 163 Ariz. at 239, 787 P.2d at 138.

We do not agree. There was but one deed of trust and, consequently, one trustee's sale. The Orians also claim that the trial court made specific findings that the four condominium units involved were four single family dwelling units. However, PNL does not challenge the finding that the condominium units constitute "dwellings," which is what the trial court focused on. As PNL correctly argues, the anti-deficiency statute requires the trust property to not only be utilized as a dwelling, but also be limited to *a single* one-family or *a single* two-family dwelling. The trust property here consisted of four single-family condominium units. Interpreting the statute to protect trust property consisting of multiple single-family dwellings would violate the language of the statute.

 The Orians further argue that PNL is attempting to exclude commercial developers from the protection of the anti-deficiency statute. The supreme court in *Mid Kansas* held that the anti-deficiency statute's protection extends to commercial owners of qualifying residential property. 167 Ariz. at 128, 804 P.2d at 1316. PNL's argument correctly focuses on the type of property protected, not the type of borrower protected. The trust property here simply does not qualify as protected property.

We acknowledge that our interpretation of the anti-deficiency statute will leave those commercial developers who secure loans through blanket deeds of trust unprotected, while protecting those developers who obtain separate deeds of trust for each one or two-family dwelling. We believe that the clear language of the statute leads to such a result.

Finally, the Orians argue that the anti-deficiency statute should apply in this case because the deficiency sought to be recovered by PNL was completely artificial and, therefore, represents exactly the type of abuse against which the anti-deficiency statute was intended to protect. *See Baker v. Gardner*, 160 Ariz. 98, 101, 770 P.2d 766, 769 (1988) (anti-deficiency statute intended to protect consumers by precluding artificial deficiencies resulting from forced sales). The trial court rejected this argument when it

granted the Defendant's motion for a new trial only as to the applicability of *Mid Kansas*. The Orians raise the argument again in a single paragraph of their answering brief in a section dealing with the anti-deficiency statute's applicability to the trust property. While the procedural rules for cross-appeals have recently been changed to avoid the unfairness of appellees forfeiting substantive issues on appeal, appellees are still not free to simply throw any issue into their briefs in any manner. Without a cross-appeal, an appellee may raise only those issues that were properly presented to the trial court and that do not enlarge the rights of the appellee or lessen those of the appellant. Ariz.R.Civ. App.P. 13(b)(3). More importantly to this case, the rule makes it clear that such issues must be stated in the appellee's statement of issues presented for review. *See* State Bar Committee Note to Rule 13(b). The Orians did not adequately preserve this issue.

We hold that the trial court erred in ruling that A.R.S. section 33–814(G) prohibited PNL from gaining a deficiency judgment against the Defendants. Because the trust property consisted of *four* condominium units secured by a single blanket deed of trust, we find that it falls outside the statutory reference to a *single* one-family or two-family dwelling. Because we hold that A.R.S. section 33–814(G) does not apply to the trust property in this case, we need not address the other issues raised by PNL.

C. *Attorneys' Fees*

 PNL has requested its reasonable attorneys' fees incurred in the trial court and on appeal pursuant to paragraph 24(g) of the Assumption Agreement between PNL and SW Pacific, and paragraph 15 of the guaranty agreements executed by Orians and Ricketts. PNL has become the successful party through this appeal, and pursuant to Rule 21, Arizona Rules of Civil Appellate Procedure, we grant PNL's request for reasonable attorneys' fees in the superior court in an amount to be fixed by this court. *See Winter v. Coor*, 144 Ariz. 56, 695 P.2d 1094 (1985) (supreme court awards attorneys' fees for

trial court proceedings to successful appellant). Pursuant to the terms of the contracts, we also award PNL attorneys' fees on appeal in an amount to be fixed by this court upon PNL's compliance with Rule 21(c), Arizona Rules of Civil Appellate Procedure.

We reverse the trial court's judgment and enter judgment in favor of PNL.

VOSS, P.J., and McGREGOR, J., concur.