[Civ. No. 28864. Fourth Dist., Div. One. May 1, 1984.]

MARTIN A. KENNEDY et al., Plaintiffs and Appellants, v. LORETTA TAYLOR, Defendant and Respondent.

COUNSEL

Thacher & Hurst, C. Dan Conaway and Debra A. Dodds for Plaintiffs and Appellants.

James S. Duberg and Marguerite Falkenborg for Defendant and Respondent.

## OPINION

**WIENER, J.**—Plaintiffs Martin A. and Sharon L. Kennedy (the Kennedys) appeal the judgment in favor of defendant Loretta Taylor. We conclude the trial court correctly found Loretta's separate property residence was not subject to her former husband's separate debt and affirm the judgment.

This is a judgment roll appeal based on a clerk's transcript. Consequently, "every presumption is in favor of the validity of the judgment and any condition of facts consistent with its validity will be presumed to have existed rather than one which will defeat it. [Citation.] The sufficiency of the evidence to support the findings is not open to review. [Citation.]" (*Wheelright* v. *County of Marin* (1970) 2 Cal.3d 448, 454 [85 Cal.Rptr. 809, 467 P.2d 537], app. dism. and cert. den., 400 U.S. 807 [27 L.Ed.2d 37, 91 S.Ct. 65].) Furthermore, "[t]he trial court's findings of fact and conclusions of law . . . are presumed to be supported by substantial evidence and are binding upon us, unless the judgment is not supported by the findings or reversible error appears on the face of the record. [Citations.]" (*Krueger* v. *Bank of America* (1983) 145 Cal.App.3d 204, 207 [193 Cal.Rptr. 322]; see generally 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, §§ 235, 236-240, 373, 399-401.)

As reflected in its tentative decision and judgment, the trial court's findings of fact and conclusions of law are as follows: Loretta and Ralph were separated, were living apart with no expectation of reconciliation and were contemplating a dissolution of their marriage when Ralph executed a promissory note to the Kennedys. The note was for a post-separation investment unrelated to the community. Ralph executed the note without Loretta's consent. The Kennedys were not led to believe Loretta acquiesced in the loan. Frederick and Virginia Foltz, husband and wife, cosigned the note along with Ralph. Sometime before Ralph signed the note, he and Loretta agreed to a division of their community property, including their residence. Two days after signing the note, Ralph quitclaimed his interest in the residence to Loretta pursuant to the terms of their earlier property settlement agreement. The quitclaim transaction thus memorialized the previous transmutation of Ralph's and Loretta's community residence into the separate property of Loretta. (See *In re Marriage of Sheldon* (1981) 124 Cal.App.3d 371, 382, fn. 10 [177 Cal.Rptr. 380], app. dism., 456 U.S. 941 [72 L.Ed.2d

462, 102 S.Ct. 2002]; 1 Markey, Cal. Family Law (1983) § 6.12[1], [2][a], pp. 6-16 through 6-19.)

After Ralph defaulted on the note, the Kennedys obtained a default judgment against him for approximately $17,560. In this action the Kennedys seek to enforce that judgment against the former community residence now separately owned by Loretta.

■ The Kennedys argue transmutation of property, even if valid as between spouses, should not be effective as against third party contract creditors. Consequently, Civil Code section 5116[1] should apply and they should be entitled to levy against Ralph's and Loretta's former community residence. Relying on Civil Code section 5121, subdivision (a),[2] Loretta responds by arguing the residence as her separate property is not liable for Ralph's separate debt to the Kennedys. The parties thus frame the issue as one of balancing the policy of protecting third party contract creditors against the policy of protecting a separated and noncontracting spouse from the other spouse's post-separation obligations.

■ "[U]sually no formalities, such as a signed writing or recordation, are required for a transmutation or management agreement to be binding between *H* and *W*. The little authority that is on point also suggests that the informal transmutation is binding on third parties, including creditors and transferees for value, unless actual or constructive fraud is established."[3] (Reppy, Jr., *Debt Collection from Married Californians: Problems Caused by Transmutations, Single-Spouse Management, and Invalid Marriage* (1981) 18 San Diego L.Rev. 143, 146.) Although none of the few cases considering the interaction of transmutation principles and creditors' rights are factually on point (see *id.*, at pp. 230-234), the cases establish courts historically have been willing to apply transmutation principles beyond the traditional context of intra-marital spousal disputes. In so doing, courts have applied transmutation principles in favor of both creditors and debtor spouses. (*Ibid.*)

---

[1]Civil Code section 5116 provides: "The property of the community is liable for the contracts of either spouse which are made after marriage and prior to or on or after January 1, 1975."

[2]Civil Code section 5121 provides in part: "(a) The separate property of a spouse is liable for the debts of the spouse contracted before or after the marriage of the spouse, but is not liable for the debts of the other spouse contracted after marriage; provided, that the separate property of the spouse is liable for the payment of debts contracted by either spouse for the necessaries of life pursuant to Section 5132."

[3]The Kennedys do not argue either actual or constructive fraud on the part of Ralph and Loretta entitles them to levy against the residence. (See *Robertson v. Willis* (1978) 77 Cal.App.3d 358, 363 [143 Cal.Rptr. 523].)

■ Here, the Kennedys argue third party contract creditors of a separated and contracting spouse should be entitled to recover against former community assets unless they were affirmatively notified by either spouse at the time credit was extended that the assets would not be available to satisfy the contracting spouse's obligation. (See 1 Markey, Cal. Family Law, *supra*, § 5.71[4], p. 5-105.) The Kennedys say it is unfair to charge creditors with inquiring whether the spouses are separated or whether any of the community assets have been transmuted. Any such unfairness aside, the Kennedys do not explain their failure to obtain Loretta's signature on the note. The trial court reasoned third party contract creditors can easily avoid the risk of unknown interspousal transfers (and the embarrassment or burden of inquiring about them) by obtaining both spouses' signatures on notes, as in fact the Kennedys did with the other married couple who signed the note. Obtaining both spouses' signatures is a reasonable burden to place on creditors who later attempt to recover against former community assets. Compared to this simple and prudent expedient, it would be unreasonable to require a separated and noncontracting spouse, in effect, to police the financial dealings of his or her contracting spouse and to remain ever vigilant to notify prospective creditors of the true status of their marital relationship and respective assets. The protection afforded Loretta as Ralph's separated and noncontracting spouse should not be subordinated to the rights of creditors who have failed to take reasonable steps to protect themselves.

■ Moreover, when spouses separate and agree to divide their community property, whether by formal written agreement or by informal transmutation, their contractual obligations as between themselves should be fully enforced. (See *Woods* v. *Security-First Nat. Bank* (1956) 46 Cal.2d 697, 701-702 [299 P.2d 657]; 2 Markey, Cal. Family Law (1983) § 26.02[2], p. 26-12.) ■ Adopting the Kennedys' argument would allow a separated and contracting spouse to effectively defeat full enforcement of a valid property settlement agreement by incurring debts unrelated to the community from third party contract creditors who fail to protect their own interests. In addition to protecting imprudent creditors at the expense of the separated and noncontracting spouse, the Kennedys' rule would allow the contracting spouse to engage in risk-free, unilateral speculation.

To demonstrate the inequity inherent in the Kennedys' position, let us assume husband and wife agree upon separation to transmute their community residence worth $100,000 into wife's separate property. Husband then obtains a $100,000 loan to invest in a venture unrelated to the community. The lender does not obtain wife's signature on the note. According to the Kennedys, where the venture then succeeds, husband's profits are his separate property (Civ. Code, § 5118) and wife receives no benefit. If, on the other hand, the venture fails, then the creditor can make itself whole

from wife's transmuted property, leaving her with nothing. In either case, it is a no lose situation for husband. To require one spouse to bear all of the risks and to receive none of the rewards of the other spouse's post-separation financial activities is patently unfair.

Judgment affirmed.

Cologne, Acting P. J., and Butler, J., concurred.