996 P.2d 745

**Christopher M. SCHLAEFER, a single man, Plaintiff–Appellant,**

v.

**FINANCIAL MANAGEMENT SERVICE, INC. an Arizona corporation, Defendant–Appellee.**

**No. 1 CA–CV 99–0203.**

Court of Appeals of Arizona, Division 1, Department D.

Jan. 27, 2000.

---

Gillespie & Associates, P.C. by Mark A. Shields, Phoenix, Attorneys for Plaintiff–Appellant.

Sternberg & Singer, LTD. by Howard A. Singer and Harry J. Miller, Phoenix, Attorneys for Defendant–Appellee.

## OPINION

GERBER, Judge.

¶ 1 The trial court found Christopher M. Schlaefer ("Schlaefer") liable for a debt incurred by his former wife during their marriage. It entered summary judgment in favor of the creditor, Financial Management Service, Inc. ("FMS"). Schlaefer now appeals from the judgment and the award of attorneys' fees to FMS. For the reasons stated below, we must reverse and remand.

## FACTUAL AND PROCEDURAL BACKGROUND

¶ 2 Schlaefer and his former wife, Shelley, were married in 1994. They entered into a premarital agreement prior to their marriage, which provided, in part, that each spouse's earnings during marriage would remain the separate property[1] of each spouse and that any interest in any property would also remain the separate property of the acquiring spouse. The agreement also provided:

> Any debts of Bride incurred prior to or during marriage, except debts for joint obligations incurred after the effective date of this Agreement, shall be the sole responsibility of Bride and her separate property, including debts for separate property secured by loans requiring signatures of both parties.

¶ 3 During the marriage, Shelley incurred a debt for medical care at Columbia Paradise Valley Hospital. Schlaefer did not sign any of the paperwork regarding Shelley's medical care nor did he ever sign any agreement for

payment. After Schlaefer and Shelley divorced, FMS sought to collect from him the debt for Shelley's medical care.

¶ 4 Schlaefer filed a motion for summary judgment in which he argued that he was not liable for Shelley's medical debt under the premarital agreement. FMS filed a cross motion for summary judgment in which it claimed that the debt was community and, further, that it was bound neither by the premarital agreement nor by the divorce decree's designation of the debt as separate. The trial court found the premarital agreement unconscionable because, in its view, the agreement purported to "sign away each other's debts." It concluded that "there is no question" but that the debt was community and that FMS was entitled to judgment against Schlaefer. It subsequently granted FMS's request for attorneys' fees and costs in the amount of $1331.

¶ 5 Schlaefer timely appeals from the judgment and award of attorneys' fees. We have jurisdiction pursuant to Arizona Revised Statutes Annotated ("A.R.S.") section 12–2101(B) (1994).

## DISCUSSION

### I. Standard of Review

¶ 6 In determining whether summary judgment is proper, this court decides whether genuine issues of material fact exist and whether the moving party is entitled to judgment as a matter of law. *See Elia v. Pifer*, 194 Ariz. 74, 83, ¶ 44, 977 P.2d 796, 805 (App.1998). On appeal, this court is not bound by the trial court's legal conclusions, such as those here. We review the grant of summary judgment *de novo.*

### II. Validity of the Premarital Agreement

¶ 7 The trial court found the premarital agreement unconscionable because it purported to "sign away" the spouses' debts

---

1. The agreement also contained the following provision:

   Each party shall be obligated to contribute an equal amount to a community bank account or accounts in the names of the parties in order to maintain the community residence, joint costs of living and any joint obligations which may be acquired. Contributions of earnings or other funds to a joint account, jointly held asset or joint enterprise will be deemed a gift to the community unless memorialized to the contrary in writing, signed by the parties.

incurred during marriage. However, FMS never challenged the validity of this agreement. It did not do so in its response to Schlaefer's motion for summary judgment or in its own cross motion for summary judgment, nor did it or any other party raise unconscionability in any form in the trial court. The issue of unconscionability was simply not before the trial court, which need not have reached it at all.

¶ 8 Although unconscionability can be decided as a matter of law by the court when it is raised, see A.R.S. § 25–202(E) (Supp. 1998), when the issue is neither raised nor briefed and the validity of the premarital agreement is unchallenged, a trial court should not rule on unconscionability *sua sponte*. If it does, it rules without benefit of argument or governing authority, thereby risking error. Here, the trial court erred both in granting summary judgment and in ruling on the unconscionability issue not before it.

¶ 9 Under A.R.S. § 25–202(C), a written and signed premarital agreement is valid unless the party against whom enforcement is sought proves either that the agreement was not voluntarily executed or that it was unconscionable *and* that a party lacked fair and reasonable disclosure of the property, did not waive the right to such disclosure, and did not have actual or constructive knowledge of the other spouse's property. Our law requires such evidence before a premarital agreement can be found unenforceable. No evidence exists that the spouses lacked fair and reasonable disclosure, that they had waived such disclosure, or lacked actual or constructive knowledge of each other's property. To the contrary, the premarital agreement *expressly* proclaimed full disclosure between the parties. The trial court concluded the agreement was unenforceable but did not find that the agreement was involuntary or that the parties lacked the requisite knowledge. Summary judgment was therefore improperly granted.

### III. Community or Separate Nature of the Debt and Schlaefer's Liability

¶ 10 Generally, all debts incurred during marriage are presumed to be commu-nity obligations unless there is clear and convincing evidence to the contrary. *See Hofmann Co. v. Meisner,* 17 Ariz.App. 263, 267, 497 P.2d 83, 87 (1972). "The necessary medical care of a spouse would normally be 'intended to benefit the community,' which is the test of whether an obligation is a community debt." *Phoenix Baptist Hosp. & Medical Center, Inc. v. Aiken,* 179 Ariz. 289, 294, 877 P.2d 1345, 1350 (App.1994) (quoting*Donato v. Fishburn,* 90 Ariz. 210, 367 P.2d 245 (1961)). FMS correctly argues that the medical debt is presumed to be a community obligation. This presumption may be overcome by clear and convincing evidence that the debt is intended as the separate debt of one of the spouses rather than both. *See MacCollum v. Perkinson,* 185 Ariz. 179, 183, 913 P.2d 1097, 1101 (App.1996).

¶ 11 Schlaefer claims that he rebutted this presumption with evidence of the premarital agreement coupled with the fact that he did not sign any documents authorizing Shelley's medical debt. He is correct in both respects. In Arizona, spouses may enter into a premarital agreement prospectively abrogating their respective claims on what would ordinarily be community property. *See* A.R.S. § 25–203 (Supp.1998); *Elia,* 194 Ariz. at 83, ¶ 46, 977 P.2d at 805; *Spector v. Spector,* 23 Ariz. App. 131, 138, 531 P.2d 176, 184 (1975). Indeed, under the same premarital agreement statute, parties may contract with respect to "the rights *and obligations* of each of the parties in any of the property of either or both of them whenever and wherever acquired," and to "[a]ny other matter, *including their personal rights and obligations,* not in violation of public policy...." A.R.S. § 25–203(A)(1), (8) (emphasis added). Nothing in the statute prohibits such parties from agreeing to keep their property *and their debts* separate during marriage. The emphasized language of the statute expressly allows agreements such as the one at issue here.

¶ 12 Under the terms of this agreement, neither Schlaefer nor his ex-wife acquired any community property during the marriage. All the debts incurred during their marriage, "except joint obligations," remained the separate debt of the spouse in-

curring the debt. Although the term "joint obligations" is undefined, a reader of the agreement must conclude that only obligations signed or authorized by both spouses are "joint." The agreement clearly shows that the spouses intended to hold their present and future property and obligations separately and that no community property would exist except to pay the expenses of a marital residence, the joint costs of living, or similar "joint" obligations. If "joint" obligations is read to include what otherwise would be community obligations apart from the agreement, such a reading defeats the spouses' clear intent to the contrary. Thus, "joint" obligations must be those that, consistent with the contract's language, reveal that both spouses authorized them.

¶ 13 Because Schlaefer did not authorize or sign any of the documents authorizing Shelley's medical care or assume liability for her resulting debt, that debt never became a joint obligation but remained at all times Shelley's separate obligation. The premarital agreement and lack of Schlaefer's consent to the debt constitute clear and convincing evidence rebutting the ordinary presumption that the debt was community. Moreover, the trial court in the underlying divorce action expressly found in its dissolution order that Schlaefer and Shelley had no community debts. Both spouses agreed to this finding by signing the consent decree, which also states that there are no community debts.

¶ 14 FMS argues that Schlaefer was required to show that Shelley intended the debt to be her separate obligation. It cites no authority for this proposition. Moreover, nothing suggests that Shelley executed the agreement involuntarily or without fair and reasonable disclosure of the property and obligations of each spouse. Her voluntary and knowing execution of the agreement is undisputed. The agreement's express terms show that she intended that all debts she incurred during the marriage would remain her sole and separate obligation. As further evidence, Shelley had listed this same hospital debt as her sole and separate responsibility in her *pro per* petition for dissolution in the trial court.

¶ 15 FMS also argues that as a third party creditor, it cannot be bound by the spouses' premarital agreement. It draws an analogy to *Community Guardian Bank v. Hamlin*, 182 Ariz. 627, 898 P.2d 1005 (App. 1995), which held that third-party creditors are not bound by the allocation of community debts in a divorce decree. *See id.* at 631, 898 P.2d at 1009. Such general statements do exist: " 'The allocation of community liabilities determines the rights and obligations of the parties before the court only with respect to each other.' *Lee v. Lee*, 133 Ariz. 118, 124, 649 P.2d 997, 1003 (App.1982). A creditor is not bound by the allocation." *Id.*

¶ 16 However, in a scenario closer to the present one, in *Elia v. Pifer* this court held that "[a] valid premarital agreement abrogating community property rights precludes a creditor of one spouse from proceeding against the separate property of the other spouse on a claim arising during marriage." *Elia*, 194 Ariz. at 84, ¶ 51, 977 P.2d at 806. *Elia* did not specifically address *Hamlin* or the argument FMS raises here. *Elia* cites a California case, *Leasefirst v. Borrelli*, 13 Cal. App.4th Supp. 28, 17 Cal.Rptr.2d 114, 116–17 (1993), which also held that a premarital agreement that transmutes otherwise community property into separate property prevents creditors from collecting from the non-debtor spouse. *Leasefirst* expressly rejected the creditor's claim that premarital agreements fail to protect third-party creditors. To the contrary, it held that

> third party creditors can easily avoid the risk of unknown interspousal transfers (and the embarrassment or burden of inquiring about them) by obtaining both spouses' signatures on notes.... Obtaining both spouses' signatures is a reasonable burden to place on creditors who later attempt to recover against former community assets.

*Id.* (quoting *Kennedy v. Taylor*, 201 Cal.Rptr. 779, 781 (App.1984)).

¶ 17 This reasoning answers FMS's concerns. Although *Hamlin* addressed third-party creditors' rights, it involved a community debt. 182 Ariz. at 631, 898 P.2d at 1009. The court's allocation of a community debt does not change its nature

or limit the right of a creditor to seek satisfaction from either spouse; it only determines the rights and obligations of the spouses "with respect to each other." *Id.* Here FMS seeks payment for a separate debt. The trial court did not and can not transmute the nature of the debt; it was always separate because of the premarital agreement and the lack of both spousal signatures. Obtaining both signatures is a reasonable means of protecting the creditor's interests in pursuing both spouses for satisfaction of a debt.

 ¶ 18 Moreover, third-party creditors like FMS are afforded protection under laws that presume generally that obligations incurred during marriage are community. *See Gutierrez v. Gutierrez,* 193 Ariz. 343, 346, ¶ 6, 972 P.2d 676, 679 (App.1998) (presumption that debts incurred during marriage are presumed to be community absent clear and convincing evidence to the contrary is primarily intended for the benefit of creditors). The spouse seeking to avoid liability bears the burden of rebutting that presumption by clear and convincing evidence. *Id.* Schlaefer has done so here. To hold that creditors can avoid valid premarital agreements allows one spouse to defeat the terms of the premarital agreement by incurring debts for which the non-debtor spouse would be liable in the face of express contrary language in the agreement. *See Kennedy,* 201 Cal.Rptr. at 781.

¶ 19 Accordingly, FMS is bound by the terms of this valid premarital agreement. The agreement is not unconscionable; no evidence or judicial findings exist to suggest that it is. Under the agreement, the debt was not a joint obligation but Shelley's separate debt. Therefore, we reverse the grant of judgment in favor of FMS and remand for entry of summary judgment in favor of Schlaefer.[2] As the successful party on appeal, we award him his attorneys' fees incurred on appeal pursuant to A.R.S. § 12–341.01(A) (1992 ), upon compliance with Rule 21, Arizona Rules of Civil Appellate Procedure. We remand for entry of judgment in his favor and reconsideration of the award of attorneys' fees incurred in the trial court.

CONCURRING: EDWARD C. VOSS, Presiding Judge, and JEFFERSON L. LANKFORD, Judge.

---

**2.** Having reversed the judgment in favor of FMS, we need not address Schlaefer's claims that FMS lacked standing to challenge the premarital agreement and the attorneys' fees issue.