NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of:

ROBERT RUBENS, *Petitioner/Appellant/Cross-Appellee,*

*v.*

KIMBERLY RUBENS, *Respondent/Appellee/Cross-Appellant.*

No. 1 CA-CV 18-0361
FILED 12-19-2019

Appeal from the Superior Court in Maricopa County
No. FN2015-094833
The Honorable Stephen M. Hopkins, Judge

**AFFIRMED IN PART; VACATED IN PART; REMANDED**

COUNSEL

Rubin & Ansel, P.L.L.C., Scottsdale
By Yvette D. Ansel
*Counsel for Petitioner/Appellant/Cross-Appellee*

Mandel Young, P.L.C., Phoenix
By Taylor C. Young
*Counsel for Respondent/Appellee/Cross-Appellant*

---

**MEMORANDUM DECISION**

Judge Kenton D. Jones delivered the decision of the Court, in which Presiding Judge Maria Elena Cruz and Vice Chief Judge Kent E. Cattani joined.

---

**J O N E S**, Judge:

¶1        Robert Rubens (Husband) appeals the family court's apportionment of marital assets and debts and award of spousal maintenance in its decree dissolving his marriage to Kimberly Rubens (Wife).  Wife cross-appeals from the court's decision to adopt a property valuation prepared by an expert who was not available for cross-examination.[1]  For the following reasons, we affirm in part, vacate in part, and remand for further proceedings.

## FACTS AND PROCEDURAL HISTORY

¶2        Husband and Wife were married in 2002.[2]  During the marriage, the couple purchased and maintained multiple properties, accumulated significant assets, and opened a wine bar (the business).

¶3        Husband filed for divorce in December 2015.  The couple entered into a Rule 69 agreement in June 2016 that required Husband to pay Wife temporary spousal maintenance in the amount of $3,000 per month.  The parties also agreed Husband was responsible to pay the mortgage and utilities for their main residence in Chandler (the Chandler residence).  Wife was responsible to pay for the Chandler residence's pool loan and a Home Depot loan.  Finally, the parties agreed they would maintain the business together, with equal access to the business itself and its financial information.  In a separate Rule 69 agreement, the parties agreed to share

---

[1]      Wife filed a motion to strike Husband's reply brief, or, in the alternative, a motion for leave to file a sur-reply.  In our discretion, we deny both requests.

[2]      We view the facts in the light most favorable to sustaining the family court's orders.  *Lehn v. Al-Thanayyan*, 246 Ariz. 277, 283, ¶ 14 (App. 2019) (citing *Boncoskey v. Boncoskey*, 216 Ariz. 448, 451, ¶ 13 (App. 2007)).

equally in certain restricted stock units (RSUs) and an anticipated 2016 tax refund.[3]

**¶4** The family court held a three-day evidentiary hearing on the remaining issues in September 2017. Prior to trial, Wife requested findings of facts and conclusions of law pursuant to Arizona Rule of Family Law Procedure 82(a). In December, the court entered a decree of dissolution (the Decree) dividing the remainder of the marital assets and debts and awarding Wife spousal maintenance of $8,000 per month for seven years. In response to multiple motions to amend and for reconsideration, the court issued an order amending, clarifying, and affirming various issues. Husband timely appealed, Wife timely cross-appealed, and we have jurisdiction pursuant to Arizona Revised Statutes (A.R.S.) §§ 12-120.21(A)(1),[4] -2101(A)(1), and (A)(2). *See In re Marriage of Dorman*, 198 Ariz. 298, 300-01, ¶¶ 3-4 (App. 2000) (explaining when resolution of a post-judgment motion results in an appealable "special order made after final judgment").

**DISCUSSION**

**I. Property and Debts**

**¶5** When dividing community property at dissolution, the family court must divide the property and debts "equitably, though not necessarily in kind." A.R.S. § 25-318(A). The court has broad discretion when apportioning community property between parties at dissolution, and we will not disturb its allocation absent an abuse of discretion. *Boncoskey*, 216 Ariz. at 451, ¶ 13 (citations omitted). The court abuses its discretion if it "commits an error of law in the process of exercising its discretion." *Id.* (quoting *Kohler v. Kohler,* 211 Ariz. 106, 107, ¶ 2 (App. 2005)). We will sustain the ruling if it is reasonably supported by the evidence, *id.*, bearing in mind that the court, as the fact-finder, is in the best position to weigh the evidence and judge the credibility of the parties. *See In re Gen. Adjudication of All Rights to Use Water in Gila River Sys. & Source*, 198 Ariz. 330, 340, ¶ 25 (2000) ("The trial court, not this court, weighs the evidence and resolves any conflicting facts, expert opinions, and inferences

---

[3] Although the dissolution proceedings were initiated in 2015 and the couple had lived separately for all of 2016, the parties agreed to file jointly in 2016, resulting in an anticipated refund of approximately $100,000.

[4] Absent material changes from the relevant date, we cite the current version of rules and statutes.

therefrom."). But, where, as here, a party requests findings of fact and conclusions of law, "[i]t must be clear from the findings how the court actually did arrive at its conclusions." *Kelsey v. Kelsey*, 186 Ariz. 49, 51 (App. 1996) (citing *Elliot v. Elliot,* 165 Ariz. 128, 135 (App. 1990)).

### A.     Credit/Offset Payments Pending Dissolution

**¶6**          Husband first argues the family court abused its discretion when it declined to give him credit for payments he made toward community property and spousal maintenance during the pendency of the divorce. Husband cites to *Bobrow v. Bobrow*, 241 Ariz. 592 (App. 2017), for the proposition that Wife was obligated to prove the payments for community expenses were meant to be a gift and, absent that proof, he was entitled to reimbursement for his payments. We disagree.

**¶7**          In *Bobrow*, the parties had entered into a premarital agreement in which the husband would not be required to pay spousal maintenance once a petition for divorce had been served. *Id.* at 596. The husband therefore had no obligation to make payments to or on behalf of the wife but chose to do so in order to keep the marital residence from falling into foreclosure. *Id.* Under those circumstances, the husband was entitled to reimbursement. *Id.*

**¶8**          Here, however, Husband agreed to pay certain community debts and spousal maintenance during the pendency of the proceedings. Wife also made payments toward community debts during this time and funded the business in excess of what was required by the Rule 69 agreement. Meanwhile, Husband paid less than half the amount of spousal maintenance ultimately awarded by the family court and was found in contempt for failing to contribute to the business as agreed. The court also determined certain expenses were improperly sought by Husband, including those related to Colorado properties which Wife had no access to during the proceedings. On this record, we cannot say the court abused its discretion by declining to credit Husband for his pre-decree payments.

### B.     Allocation of Business Debt

**¶9**          Husband next argues the family court erred by allocating half of the business debt to him because he did not know about, and did not consent to, additional debt incurred after the petition for dissolution was filed and "was never afforded equal management and control over [the business]." Husband's claims are not supported by the record.

**¶10**          Here, the parties agreed that:

> With respect to the business . . . Husband shall be entitled to receive information regarding the business's income and expenses on a "real time" basis (no less than monthly) from Wife. Husband may communicate directly with the bookkeeper for the business if he has questions or if Wife does not timely supply the information.
>
> Each party shall contribute $5,000.00 per month toward the business's operating expenses, unless notified that the business has turned a profit in the prior month, no later than the first of each month. This contribution shall be without prejudice to either party on any business-related issue. Each party understands that additional moneys are expected to be requested or required.
>
> . . .
>
> Wife shall ensure that the business consultant . . . has been instructed to provide his recommendations to both parties.
>
> With respect to the construction lien against the business, Husband shall be authorized and responsible to handle the strategic decisions and negotiations for the resolution of the lien. The parties' business attorney is in possession of all relevant information.

The agreement thus affords Husband equal access to and control over the business. Indeed, Husband contacted the business consultant for information at least one time in 2017. The agreement anticipates additional monies, beyond the $5,000 monthly payments, would be necessary to maintain the business. Yet, Husband did not make the monthly payments.

¶11 Husband also argues he should not be responsible for the debt incurred after service of the petition because it did not benefit the community. We again disagree. "Generally, all debts incurred during marriage are presumed to be community obligations unless there is clear and convincing evidence to the contrary." *Cardinal & Stachel, P.C. v. Curtiss*, 225 Ariz. 381, 383, ¶ 6 (App. 2010) (quoting *Schlaefer v. Fin. Mgmt. Serv., Inc.*, 196 Ariz. 336, 339, ¶ 10 (App. 2000)). "[A]ll that is required is that some benefit was intended for the community[;] . . . no actual pecuniary benefit need be received." *Id.* at 384, ¶ 10 (internal quotation and citation omitted). Although the community asset — the business — was not profitable, Husband does not present clear and convincing evidence that the debt

incurred to maintain a community asset at the same level it performed during the marriage was not intended to benefit the community.

**¶12** On this record, we cannot say the family court abused its discretion in rejecting Husband's claims that he did not have access to the business or that allocation of a portion of the business debt to him was inequitable.

### C. Schedule for Payment of Business Debt

**¶13** Husband argues the family court abused its discretion when it amended the Decree to require the business debts be paid in accordance with the schedule included in Wife's response to Husband's motion for reconsideration. Husband first argues the court erred because Wife's schedule is inconsistent with the Decree in that some of the debts identified therein were not included on a list of business debts submitted to the court at the evidentiary hearing.

**¶14** The Decree states: "debt to the shareholders and all external debt that exists *as of the date of this Decree* shall be paid via sale of the Chandler residence." The emphasis in the language of the Decree indicates the family court considered and recognized that additional debt may have been incurred between the September evidentiary hearing and entry of the Decree in December. Thus, the court correctly contemplated that some post-hearing debt would be incurred prior to entry of the Decree.

**¶15** Husband also asserts Wife's schedule contradicted the Decree because line items 2500 through 2800 were not included within the Decree. On this point, the Decree defines the debt to "include current liabilities (accounts 2210-2350) but shall be exclusive of payroll (2100) and shall include shareholder notes payable (account 2400)." Although line items 2500 through 2800 were not specifically included in the family court's description, nor were they specifically excluded. Accordingly, Husband has not established a contradiction or abuse of discretion in the decision to include line items 2500 through 2800 as payables in the order amending the Decree.

### D. Allocation of Financial Accounts

**¶16** Husband next argues the family court erred in its division of the parties' financial accounts. The court awarded certain accounts to Husband with an equalization payment to Wife of $16,787.47. Husband argues the total value of the accounts was $9,200.70, and Wife should have been awarded only $4,600.35. However, Husband's calculation recognizes

some of the amounts identified in the Decree but omits others. In her answering brief, Wife attempts to explain the court's order by referring to amounts not referenced in the Decree. Still, she does not reach the same calculation. Because the basis for the equalization payment is unclear, we reverse the court's division of the financial accounts and remand for further proceedings. *See Kelsey*, 186 Ariz. at 51 ("If the trial court's basis for a conclusion is unclear, this Court may not affirm simply because we find some possible basis for that conclusion in the record.") (citing *Elliott*, 165 Ariz. at 135).

### E. Allocation of 2016 Tax Refund

**¶17** Husband argues the trial court erred in amending the Decree that originally awarded him the entirety of the 2016 tax refund, to allocate the refund equally between the parties. *See supra* ¶ 3. Husband concedes that the parties had previously agreed to split the refund equally but argues the initial ruling was intended to serve as an equalization for expenses incurred during the pendency of the divorce. The record does not support this assertion. The Decree originally stated: "Husband shall be solely entitled to any tax refunds and will be solely responsible for any tax liability in connection with 2016 taxes." If the family court was not certain whether the 2016 taxes would result in a refund or liability, it could not have intended the refund to serve as a credit. Husband fails to show any abuse of discretion here.

## II. Spousal Maintenance

**¶18** Husband next argues the family court erred in setting the amount of spousal maintenance. We review the award of spousal maintenance for an abuse of discretion. *Cullum v. Cullum*, 215 Ariz. 352, 354, ¶ 9 (App. 2007) (citing *Gutierrez v. Gutierrez*, 193 Ariz. 343, 348, ¶ 14 (App. 1998)).

**¶19** Husband first argues the family court erred in concluding he had the ability to meet his needs while paying $8,000 in monthly spousal maintenance to Wife. *See* A.R.S. § 25-319(B)(4) (directing consideration of "[t]he ability of the spouse from whom maintenance is sought to meet that spouse's needs while meeting those of the spouse seeking maintenance"). Citing an unpublished memorandum decision, Husband suggests the court is required to review his net income and expenses when evaluating this factor, and then suggests the court failed to consider this evidence because his financial disclosure reflects monthly expenses in excess of his net income. Husband's trial testimony, however, reflects he shares the

expenses listed on the financial disclosure with his girlfriend. Additionally, many of the expenses relate only to his girlfriend's children. On this record, Husband has not established an abuse of discretion in the consideration of Husband's financial needs.

**¶20** Husband next argues the family court failed to consider Wife's historic income when determining she "would need to obtain some type of degree or certification to realistically obtain anything other than a minimum wage job." *See* A.R.S. § 25-319(B)(5) (directing consideration of "[t]he comparative financial resources of the spouses, including their comparative earning abilities in the labor market"). Substantial evidence supports the court's finding. Although the record reflects Wife had earned significantly more than minimum wage periodically between 2007 and 2015, she testified she had been compensated far above her "experience and skill set." Additionally, some of that income resulted from the purchase and sale of jointly owned real estate. Finally, Husband is a medical doctor, while Wife's highest level of education is a high school equivalency diploma. We find no error.

**¶21** Finally, Husband argues the family court erred by failing to take into account the value of the assets Wife was awarded in the Decree before setting the award of spousal maintenance. *See* A.R.S. § 25-319(B)(9) (directing consideration of "[t]he financial resources of the party seeking maintenance, including marital property apportioned to that spouse, and that spouse's ability to meet that spouse's own needs independently"). Husband specifically contends the court failed to consider Wife's interest in RSUs. Although the court did not make a specific finding as to this asset, it did find that "both parties have received significant assets as part of the divorce. But, [W]ife has also received a community business that has historically hemorrhaged money." The finding is supported by the record and indicates the court considered the nature and extent of Wife's financial resources, including the property she received in the Decree, before exercising its discretion to set an amount of maintenance. The spousal maintenance order is affirmed.

## III. Valuation of Red Cliff Property

**¶22** Wife cross-appeals the family court's order valuing real property in Colorado (the Red Cliff property) at $442,000, arguing the only evidence supporting this value was "an expert report where there was no expert to testify." She argues her due process rights were violated because the expert was not available to lay foundation for the basis of his opinions and was not available to be cross-examined. When the objection was raised

at trial, the court found Husband laid sufficient foundation to admit the report into evidence through his own testimony and that Wife had had sufficient opportunity to question its author, either via deposition or by subpoenaing him for trial, had she so desired. We review an evidentiary ruling for a clear abuse of discretion and will reverse only if the ruling is erroneous or unfairly prejudicial. *Larsen v. Decker*, 196 Ariz. 239, 241, ¶ 6 (App. 2000).

¶23 Husband does not have the qualifications in real estate or property valuation necessary to lay the foundation for the expert opinion on the value of the Red Cliff property. The family court erred in admitting the report based on his testimony.

¶24 Regarding prejudice, the record reflects that Husband testified the property was worth $500,000. Wife testified consistently with a second valuation report that the property was worth $555,000. Because the properly admitted evidence suggests the Red Cliff property was worth significantly more than the valuation in the report that was erroneously admitted, Wife was prejudiced by the family court's consideration of it. On remand, the court should determine the value of the Red Cliff property based upon evidence properly admitted.

## CONCLUSION

¶25 The family court's orders dividing the parties' financial accounts and setting a value for the Red Cliff property are vacated. The case is remanded to address the value of the financial accounts and the value of the Red Cliff property, and for equitable distribution of those assets. The court retains discretion to determine whether additional evidence or briefing is necessary to decide the issues. The remaining orders regarding the allocation of property and debt and spousal maintenance are affirmed.

¶26 Wife requests an award of attorneys' fees and costs incurred on appeal pursuant to A.R.S. § 25-324(A). In our discretion, we decline the request. We further find that neither party is entitled to costs pursuant to A.R.S. § 12-341.