NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In re the Matter of:

BETH JAMISON, *Petitioner/Appellant*,

*v.*

BLAIR ROBERT JAMISON, *Respondent/Appellee*.

No. 1 CA-CV 20-0705 FC
FILED 10-14-2021

Appeal from the Superior Court in Maricopa County
No. FC2019-053784
The Honorable Dawn M. Bergin, Judge (retired)

**AFFIRMED**

COUNSEL

The Law Office of Carrie M. Wilcox, PLLC, Phoenix
By Carrie M. Wilcox
*Counsel for Petitioner/Appellant*

James Portman Webster Law Office, PLC, Mesa
By James Portman Webster
*Counsel for Respondent/Appellee*

---

**MEMORANDUM DECISION**

Judge Paul J. McMurdie delivered the Court's decision, in which Presiding Judge Peter B. Swann and Judge David D. Weinzweig joined.

---

**M c M U R D I E**, Judge:

¶1   Beth Jamison appeals from the superior court's dissolution decree. She argues that the court erred in determining parenting time and child support, dividing community assets and debt, allocating child tax exemptions, and failing to award her attorney's fees. We reject the arguments raised and affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2   Beth ("Mother") and Blair Jamison ("Father") were married in 2005 and have two minor children. In 2019, Mother petitioned for dissolution of the marriage. The parties agreed to a temporary parenting schedule, and the court awarded parenting time to Father every other weekend and one evening a week. In addition, given his past mental health issues, Father agreed to a psychological evaluation and assessment of his parenting abilities.

¶3   In the joint pretrial statement, Mother requested the parenting schedule continue as provided under the court's temporary order. Father asked for equal parenting time under a 5-2-2-5 plan. The psychological evaluation found that Father had experienced some delusions in the past but was currently in complete remission.

¶4   At the trial, Mother testified she bought a home during the marriage with a down payment gifted from her mother. She argued that the house was her separate property and asserted Father deserved no interest in it.

¶5   Following the trial, the court found that Father's home had less structure and routine, which was not conducive to remedying some behavioral issues with one child. The court also found that the children were sometimes tired and irritable at school when they spent the previous night with Father. The court noted that it would not limit Father's parenting time based on the psychological evaluation. Even so, the court determined that the children should spend most school nights with Mother.

**¶6** The court ordered parenting time for Father beginning Fridays after school and ending Tuesdays before school, except that Mother would have parenting time one weekend per month. In addition, Mother and Father would have parenting time during alternate weeks in the summer. Under the order, Father also had parenting time during fall and spring breaks. The court said that Father's parenting time during the breaks was intended to equalize parenting time during the year as much as possible.

**¶7** The court found per the Arizona Child Support Guidelines that Father would have to pay Mother $13 per month but ordered that Father pay no child support. The court also ordered that Mother provide the children with medical insurance and pay 62% of medical expenses not covered by insurance. Each parent was made financially responsible for childcare expenses incurred during his or her parenting time. Mother was awarded three-fifths, and Father was awarded two-fifths of the state and federal child tax exemptions.

**¶8** The court ordered Father solely responsible for the student loan debt he incurred during the marriage and other obligations owed to Merrick Bank, Credit One, and his parents. The community was allocated the debts owed to Wells Fargo, Capital One, and PayPal.

**¶9** Though both parties requested attorney's fees, the court found that neither party had met its burden under A.R.S. § 25-324(A) and declined to award fees.

**¶10** Mother moved to alter or amend the judgment under Rule of Family Law Procedure 83(a) following the decree. The superior court denied the motion. Mother appealed, and we have jurisdiction under A.R.S. §§ 12-2101(A)(1), -120.21(A)(1), and Arizona Rule of Family Law Procedure 78(c).

## DISCUSSION

**¶11** We review the superior court's parenting-time, child-support, property-division, and attorney's fees orders for an abuse of discretion. *Nold v. Nold*, 232 Ariz. 270, 273, ¶ 11 (App. 2013) (parenting time); *Birnstihl v. Birnstihl*, 243 Ariz. 588, 590, ¶ 8 (App. 2018) (child support); *Hefner v. Hefner*, 248 Ariz. 54, 57, ¶ 6 (App. 2019) (property division and attorney's fees).

A. **The Superior Court Did Not Abuse its Discretion in Awarding Parenting Time.**

¶12        When parenting time is contested, "the court shall adopt a parenting plan that . . . maximizes [the parents'] respective parenting time" and determine parenting time based on the best interests of the children. A.R.S. §§ 25-403.02(B), -403(A). To determine a child's best interest, the court must consider a non-exhaustive list of factors. *See* A.R.S. § 25-403(A)(1)–(11). Without evidence to the contrary, generally equal or near-equal parenting time is presumed to be in a child's best interests. *Woyton v. Ward*, 247 Ariz. 529, 531, ¶ 6 (App. 2019). We will affirm the superior court's determination of best interests unless the appellant shows the court "commit[ed] legal error or when the record is devoid of competent evidence to support the court's decision." *Id.* at ¶ 5.

¶13        Mother argues the superior court failed to weigh the recommendations in the psychological evaluation. One of the factors the court must consider when determining the child's best interests is the mental and physical health of the individuals involved. A.R.S. § 25-403(A)(5). In considering Father's mental health, the court found that Father's had bouts of delusional thinking that peaked in 2016. The court noted that Father's psychological evaluation reported that "without professional treatment, he may experience another episode with which he has anxiety, depression, and delusions" and that "without psychiatric professionals involved, Father may not know he is in need of help and may place the children in harm's way, even if unintentionally." But the court also recognized that Father had not shown aggression toward or paranoid thoughts involving the children, there was no credible evidence that Father had recently suffered from delusions, and the psychological evaluation reported that Father's symptoms were in complete remission. Thus, the superior court's findings about Father's mental health were supported by the evidence and did not constitute an abuse of discretion.

¶14        Mother argues the court's parenting plan is not in the children's best interests because, as recognized by the court, the children's school reported that they are tired and irritable after spending the night with Father. The court found there was no valid basis to limit Father's parenting time, but the "children are better served by being in Mother's care the majority of the school week" and awarded Father two out of five school nights per week during the school year. Thus, the court did not abuse its discretion by awarding Father parenting time two school nights per week.

¶15 Mother also argues that the court abused its discretion by awarding Father parenting time during the children's fall and spring breaks. The court granted Father this added time to "equalize parenting time to the extent possible." The extra time accounts for Mother's other parenting time the second weekend of every month during the school year. Mother argues that because Father has more parenting time each week of the school year, an award of parenting time to Father during the children's fall and spring breaks is unnecessary for equalization. But during the school year, Mother and Father each have four days of parenting time per week as calculated under the Arizona Child Support Guidelines. A.R.S. § 25-320 app. § 11(A), (C)(1)–(2) (2018) ("Guidelines") (defining a parenting period of 12 hours or more as one day and a period between 6 and 11 hours as a half-day). The parents were allocated an equal amount of parenting time during the school week, but Mother received more time on the second weekend of each month. As a result, the superior court's allocation of parenting time to Father during the children's fall and spring breaks was not an abuse of discretion.

**B.     The Superior Court Did Not Abuse Its Discretion by Determining that Father Did Not Have to Pay Child Support.**

¶16 Mother argues the court erred by failing to order Father to pay child support and by failing to divide childcare expenses equally between the parties. Mother concedes that the Guidelines allow for a reduction of Father's obligation from $13 to $0. But Mother asserts the court should have determined Father's obligation based on the parties' agreement concerning after-school care expenses.

¶17 The Guidelines permit but do not require a court to add to the basic child support obligation amounts for childcare costs. Guidelines § 9(B)(1). So the court did not have to add to Father's obligation to account for Mother's more significant share of the after-school childcare costs under the parenting schedule.

¶18 Mother claims the court abused its discretion by failing to order that childcare costs be shared equally between the parties after they agreed on the record to an equal division of childcare costs. However, the superior court is not bound by the parties' agreement on child support. It therefore did not abuse its discretion by ordering Mother and Father to pay for the childcare expenses incurred during parenting time. A.R.S. § 25-317(B).

### C.     The Superior Court Did Not Abuse its Discretion by Allocating Father Two-Fifths of the Child Tax Exemptions.

¶19      Mother argues that Father should not have been allocated two-fifths of the child-tax exemptions. She makes the claim because she provides medical insurance for the children, pays for certain childcare expenses, and the court did not order Father to pay child support. Under the Guidelines, child tax exemptions are allocated according to the parties' relative income, with each parent receiving exemptions proportionate to his or her percentage of the combined adjusted gross income. Guidelines § 27. The Guidelines only allow for a deviation from this calculation method if one parent will not derive a tax benefit from the exemption or has a history of nonpayment of child support. *Id.* The superior court correctly allocated the child tax exemptions.

### D.     The Superior Court Did Not Err by Allocating the Wells Fargo, Capital One, and PayPal Debts Equally between the Parties.

¶20      Mother asserts that because Father failed to produce all the credit card statements associated with the Wells Fargo, Capital One, and PayPal accounts, it was error for the court to allocate those debts to the community to be equally divided between the parties. Debts incurred during marriage are presumed to be community debts. *Schlaefer v. Fin. Mgmt. Serv., Inc.*, 196 Ariz. 336, 339, ¶ 10 (App. 2000). But "[t]his presumption may be overcome by clear and convincing evidence that the debt is intended as the separate debt of one of the spouses rather than both." *Id.*

¶21      Father testified and provided statements showing that the accounts were opened before the service of Mother's petition. He also testified that some of the debt was incurred to pay for his living expenses after the parties separated. Mother testified that she lacked access to these accounts, and the charges did not benefit the community. But the amount of debt allocated to the community from the accounts was based on the balances on the service date. The court thus did not err by assigning to the community the balances of the three credit accounts as of the date of service and ordering each party to be responsible for an equal share of that debt.

¶22      Mother also argues Father committed misconduct by failing to produce all credit card statements as ordered by the court and that, because of Father's misconduct, the court should have allocated the debt to Father. If a party fails to obey an order to provide discovery, the court may enter sanctions, including directing those particular facts to be taken as

established. Ariz. R. Fam. Law P. 65(b)(1)(A). While such a sanction is allowed under Rule 65, it is not mandatory. Thus, the court did not abuse its discretion by refusing to allocate the debts to Father as a sanction for his failure to provide the statements.

**E.      The Superior Court Did Not Err by Calculating Father's Equitable Lien on Wife's Home Using the Full Mortgage Payment Rather Than the Amount Paid Toward the Principal When Mother Failed to Introduce Evidence of the Amount Paid Toward the Principal.**

¶23      After the parties separated, Mother bought a home and Father signed a disclaimer deed to the property. The superior court found that the house was Mother's separate property but that Father was entitled to an equitable lien for the value of the principal payments made during the marriage by the community to be calculated according to *Drahos v. Rens*, 149 Ariz. 248, 250 (App. 1985). In her pretrial statement, Mother asserted that the community had paid around $28,000 in mortgage payments before she served her petition. Yet mother introduced no other evidence about the amount contributed by the community to reduce the principal balance. The court, therefore, used the amount in Mother's pretrial statement to calculate Father's equitable lien.

¶24      In her motion to alter or amend the judgment, Mother asserted that the $28,000 figure included interest together with the principal, and the court should instead calculate Father's lien using a figure representative of the amount of the principal paid by the community. The court did not recalculate Father's lien, and Mother argues this was an error. Although a *Drahos* calculation is correctly performed using the amount of principal paid by the community, it was not error for the court to perform the analysis using the only figure provided by Mother.

**F.      The Superior Court Did Not Err by Denying Both Parties' Requests for Attorney's Fees.**

¶25      Under A.R.S. § 25-324(A), the court may award reasonable attorney's fees after considering the financial resources of both parties and the reasonableness of the positions each party has taken throughout the proceedings. Mother argues that Father's positions throughout the proceedings were unreasonable and that the court abused its discretion by finding that she had not met her burden under A.R.S. § 25-324(A). Yet, an award of attorney's fees under A.R.S. § 25-324(A) is discretionary. Mother has a higher annual income than Father, and the superior court found that Mother had not established that an award was appropriate under the

statute. The superior court thus did not abuse its discretion by denying Mother's fee request.

## ATTORNEY'S FEES AND COSTS

¶26 Both parties request an award of attorney's fees and costs. Because Father is the successful party on appeal, we award his costs but decline to award his attorney's fees per our discretion. A.R.S. § 12-341.

## CONCLUSION

¶27 We affirm the superior court's dissolution decree.



AMY M. WOOD • Clerk of the Court
FILED:   AA