NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

KRISTIAN V., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, A.V., *Appellees*.

No. 1 CA-JV 21-0318
FILED 4-14-2022

Appeal from the Superior Court in Mohave County
No. B8015JD201904058
The Honorable Rick A. Williams, Judge

**AFFIRMED**

COUNSEL

Law Office of Elizabeth M. Hale, Lakeside
By Elizabeth M. Hale
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Jennifer R. Blum
*Counsel for Appellee Department of Child Safety*

---

## MEMORANDUM DECISION

Judge D. Steven Williams delivered the decision of the Court, in which Presiding Judge Cynthia J. Bailey and Judge Peter B. Swann joined.

---

**W I L L I A M S**, Judge:

**¶1**          Kristian V. ("Father") appeals the superior court's order terminating his parental rights to his child. For the following reasons, we affirm.

### FACTUAL AND PROCEDURAL HISTORY

**¶2**          Father and Paige M. ("Mother") are the parents of A.V. Mother also has an older child, N.M., with another man. The Arizona Department of Child Safety ("DCS") took custody of N.M. because Mother was not addressing her mental-health issues and had engaged in domestic violence with N.M.'s father and neglected N.M. Mother minimally participated in N.M.'s dependency.

**¶3**          Eight months later, DCS took custody of A.V. at birth and petitioned for a dependency, alleging Father was unable or unwilling to provide for the infant's needs. Despite Mother's failure to participate in services to address DCS's many concerns, Father told the DCS investigator he had no concerns about leaving A.V. in Mother's full-time care. Additionally, Father and Mother had just moved after issues with their former landlord resulted in a protective order. Moreover, Father was on felony probation for facilitation of aggravated assault.

**¶4**          DCS asked Father to participate in services, including substance-abuse testing, individual and domestic-violence counseling, parenting and domestic-violence classes, and visitation.[1] Father failed to meaningfully participate in any service, however, and DCS moved to terminate his parental rights based on the six-month out-of-home placement ground. *See* A.R.S. § 8-533(B)(8)(b). During the dependency, the parents maintained an unstable relationship, and at one point, Mother disclosed to DCS that she and Father had engaged in domestic violence.

---

[1] Later on in the dependency, the superior court relieved Father of the substance-abuse testing requirement.

After a hearing, the superior court terminated Father's parental rights, and he appealed. We have jurisdiction under Article 6, Section 9, of the Arizona Constitution, A.R.S. §§ 8-235(A), 12-120.21(A)(1), -2101(A)(1), and Arizona Rule of Procedure for the Juvenile Court 103(A).

**DISCUSSION**

¶5          Father argues insufficient evidence supports the superior court's finding that he substantially neglected or willfully refused to remedy the circumstances causing A.V.'s out-of-home placement. A parent's right to custody and control of his own child, while fundamental, is not absolute. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 248, ¶¶ 11-12 (2000). Termination of a parental relationship may be warranted where the State proves one statutory ground under A.R.S. § 8-533 by clear and convincing evidence. *Id.* at 249, ¶ 12. Clear and convincing means the grounds for termination are highly probable or reasonably certain. *Kent K. v. Bobby M.*, 210 Ariz. 279, 284-85, ¶ 25 (2005). The court must also find that termination is in the child's best interests by a preponderance of the evidence. *Id.* at 285, ¶ 29.

¶6          This court "will accept the [superior] court's findings of fact unless no reasonable evidence supports those findings, and we will affirm a [termination] order unless it is clearly erroneous." *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002). We do not reweigh the evidence, but "look only to determine if there is evidence to sustain the court's ruling." *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004).

¶7          The superior court may terminate a parent's rights to his child if: (1) the child is under three years of age, (2) is in an out-of-home placement for a cumulative total period of six months or longer, (3) DCS has made a diligent effort to provide appropriate reunification services, and (4) "the parent has substantially neglected or wilfully refused to remedy the circumstances that cause the child to be in an out-of-home placement, *including refusal to participate in reunification services* offered by" DCS. A.R.S. § 8-533(B)(8)(b) (emphasis added). Because Father does not challenge the court's findings regarding the child's age, length of the out-of-home placement, or that DCS made diligent efforts to provide appropriate reunification services, he has abandoned those arguments on appeal. *See Christina G. v. Ariz. Dep't of Econ. Sec.*, 227 Ariz. 231, 234, ¶ 14 n.6 (App. 2011) (recognizing the failure to develop an argument on appeal usually results in abandonment and waiver of the issue).

3

¶8            Father first asserts that DCS's allegation in the dependency petition stating he was unwilling or unable to provide for A.V. was false and argues the only reason A.V. was not placed in his care was because he had not completed a paternity test. Father never appealed the dependency order, however, and this court therefore lacks jurisdiction to review his claim. *See Lee v. Lee*, 133 Ariz. 118, 124 (App. 1982) (appellate court "acquires no jurisdiction to review matters not contained in the notice of appeal").

¶9            Regardless, as Father acknowledges, he had not yet established paternity to A.V. And, at the time the petition was filed, Mother had an open dependency for her older child based on numerous, unresolved issues affecting her ability to parent. Moreover, Father was on felony probation and had agreed to drug test for DCS.

¶10          Father next argues DCS made false claims regarding his substance-abuse history and mental health to obtain his medical records. Indeed, many of the facts alleged in DCS's motion to obtain Father's information are not supported by the record. A motion based on false allegations can certainly raise ethical concerns. *See* Ariz. R. Sup. Ct. 42, ER 3.3(a)(1) ("A lawyer shall not knowingly . . . make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer . . . ."); *In re Alexander*, 232 Ariz. 1, 5-7, ¶¶ 12-21 (2013) (providing ER 3.1 requires an attorney to be sufficiently informed "about the applicable facts and law to make good faith and nonfrivolous arguments" when filing and maintaining an action). But Father did not object to the motion.

¶11          Father also asserts DCS did not provide documentation for its claim that he and Mother engaged in domestic violence. Only disputed testimony about the alleged incident appears in the record.

¶12          Nevertheless, Father's well-taken arguments concerning the defects in DCS's motion do not undermine the termination order because the superior court did not terminate his parental rights based on his substantial neglect or willful refusal to remedy a substance-abuse, domestic-violence, or mental-health issue. Rather, the court found that over the sixteen-month dependency, Father "failed to adequately engage in parenting time" and is a "stranger" to A.V. Further, the court found that "[t]here is no bond or attachment" between Father and A.V. because Father had:

> more than one year to build a relationship with [A.V.] and simply failed to make it a priority. . . . Father only exercised a

handful of visits despite having multiple opportunities to
have regular and consistent contact with [the infant]. . . .
Father refused to engage in parenting time, which has made
the establishment of a parent-child relationship – and by
extension reunification – impossible.

¶13        Reasonable evidence supports these findings. Father
cancelled or missed more visits than he completed, leading the case
manager to describe his participation as "extremely inconsistent." Indeed,
after his first four visits, Father did not visit A.V. at all for the next four
months. For the three months following this lapse, he missed about half the
offered visits, and his participation did not improve even when the case
manager offered him virtual visits. In fact, Father did not visit A.V. for
another seven-and-a-half months, leading the case manager to testify that
A.V. does not have a bond with Father. *See Maricopa Cty. Juv. Action No.
JS-501568*, 177 Ariz. 571, 576 (App. 1994) (providing "[t]ermination is not
limited to those who have *completely* neglected or willfully refused to
remedy such circumstances," and may apply when a parent "makes only
sporadic, aborted attempts to remedy" the circumstances).

¶14        Father also briefly argues termination was not in A.V.'s best
interest because he "has a family that loves him and wants him in their
lives." In addition to finding a statutory ground for termination, the
superior court must also determine what is in the best interests of the child
by a preponderance of the evidence. *Kent K.*, 210 Ariz. at 284, ¶ 22. "[A]
determination of the child's best interest must include a finding as to how
the child would benefit from a severance or be harmed by the continuation
of the relationship." *Maricopa Cty. Juv. Action No. JS-500274*, 167 Ariz. 1, 5
(1990). "[C]ourts must consider the totality of the circumstances existing at
the time of the severance determination, including the child's adoptability
and the parent's rehabilitation." *Alma S. v. Dep't of Child Safety*, 245 Ariz.
146, 148, ¶ 1 (2018).

¶15        Here, Father's arguments amount to a request to reweigh the
evidence, which this court will not do. *See Mary Lou C.*, 207 Ariz. at 47, ¶ 8.
The superior found (1) A.V. was living with the adoptive parents of his
half-sibling, (2) had "formed a strong bond and attachment" with the
family, (3) was "thriv[ing] in a stable, loving home surrounded by the only
family [A.V.] knows," and (4) there was potential for A.V.'s adoption.
Reasonable evidence supports these findings, as well as the court's
determination, based upon these findings, that it was in A.V.'s best interests
to terminate Father's parental rights.

**CONCLUSION**

**¶16** For the foregoing reasons, we affirm the order terminating Father's parental rights.



AMY M. WOOD • Clerk of the Court
FILED:          JT