NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

In re the Matter of:

ROBYN HANGER, *Petitioner/Appellee,*

*v.*

JOEL HANGER, *Respondent/Appellant.*

No. 1 CA-CV 24-0128 FC

FILED 02-13-2025

Appeal from the Superior Court of Maricopa County
No. FC2012-070854
The Honorable Jillian Francis, Judge

**AFFIRMED**

COUNSEL

Strong Law, Tempe
By Marc R. Grant, Jr.
*Counsel for Petitioner/Appellee*

Joel Hanger, Phoenix
*Respondent/Appellant*

---

**MEMORANDUM DECISION**

Judge Andrew M. Jacobs delivered the decision of the Court, in which Presiding Judge Cynthia J. Bailey and Vice Chief Judge Randall M. Howe joined.

---

**J A C O B S**, Judge:

**¶1**　　　　Joel Hanger ("Father") appeals the superior court's January 2024 Under Advisement Ruling ("the 2024 Ruling") on his Petition to Modify Legal Decision-Making, Parenting Time, and Child Support ("Petition"). The 2024 Ruling allowed Father supervised parenting time every other week and awarded Mother sole legal decision-making. For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

### A.　The Superior Court Grants Mother Sole Legal Decision-Making Authority, Which Father Unsuccessfully Appeals.

**¶2**　　　　This case arises from a years-long parenting dispute, including several petitions to modify, now on its fourth appeal.

**¶3**　　　　Mother and Father divorced by a decree entered December 11, 2012, which provided for joint legal decision-making and parenting time of their three shared minor children: E.H., K.H., and M.H. Since then, both parents have sought to modify the arrangement through temporary and permanent orders.

**¶4**　　　　On November 24, 2020, after a trial, the superior court issued an Under Advisement Ruling addressing Father's outstanding petition to modify and Mother's counter-petition. The court granted Mother sole legal decision-making authority and designated her the primary residential parent. The court awarded Father parenting time, which would be increased upon successful completion of a conflict class and could be increased further if Father participated in a previously ordered psychological examination. Father appealed the November 2020 Ruling. We affirmed. *Hanger v. Hanger*, 1 CA-CV 21-0138 FC, 2022 WL 1549158 (Ariz. App. May 17, 2022).

**B.**     **Father Refuses to Return Two Children to Mother, and the Court Enters Temporary Orders Giving Mother Sole Legal-Decision Making Authority.**

**¶5**     On March 3, 2021, Mother filed a petition for contempt and to enforce parenting time ("Contempt Petition") and moved for temporary orders and a warrant to take physical custody of E.H. and M.H. after Father refused to return them to Mother at the end of his parenting time the prior week. Father simultaneously moved to modify parenting time.

**¶6**     The court held an evidentiary hearing on Mother's motion for temporary orders, and on March 15, 2021, entered temporary orders ("the 2021 Temporary Orders") giving Mother sole legal decision-making authority for all three children. The court also limited Father's parenting time to supervised visits. The court stated it would not consider lifting the supervision limitation until Father completed a psychological evaluation ordered in April 2020.

**¶7**     The superior court also held an evidentiary hearing on Mother's Contempt Petition and issued its Under Advisement Ruling ("Contempt Ruling") in September 2021. The court further limited Father's parenting time to supervised phone calls as a sanction for improperly withholding the children. The court again stated that the limitations on Father's parenting time would not be removed until he completed a psychological evaluation.

**¶8**     In June 2022, after a status conference and briefing on how to establish final orders, the superior court denied Father's Petition to Enforce and Motion For Stay of Orders, which for the first time, argued the November 2020 Ruling was procured by fraud. The court rejected the petition, stating that Father sought only to relitigate "prior matters that [had] already been addressed multiple times" by the court, including in the November 2020 Ruling, and the Court of Appeals. The court also denied Mother's request to make the 2021 Temporary Orders permanent.

**C.**     **Father Files His Petition to Modify and the Superior Court Holds a Trial.**

**¶9**     In December 2022, Father filed a petition ("2022 Petition") seeking: (1) a modification of legal decision-making, parenting time, and child support; (2) a release of unredacted case information; and (3) the setting aside of the November 2020 Ruling.

¶10         At the November 2023 trial, Mother testified Father had not exercised his parenting time since March 2021, when he refused to return E.H. and M.H. to Mother. She testified he never exercised the telephonic parenting time the Contempt Ruling authorized in September 2021, except when she agreed to be the supervisor of it in either late 2021 or early 2022.

¶11         Mother and S.S., Father's current partner, testified about Father's practice of attending the children's sporting events with signs drawing attention to the dispute. S.S. testified Father frequently held a sign that included photos of the children and read "#FreetheHangerKids I love you, I've done no wrong." Mother testified that at a game in September 2021 Father "wav[ed the sign] around saying . . . 'I've done no wrong, they'll be home soon.'" Mother further testified that Father "proceeded to go inside the building and wave it around and kind of talking and making it known in the middle of the [events]." Mother testified Father repeated this conduct and that it negatively impacted the children's mental health and behavior.

¶12         Mother also testified about Father's website, ProPer.legal, which published statements such as "#FreetheHangerKids, #StopFalse Reporters, R[.] S[.], Judge Lisa Vandenberg and Judge Joseph Kiefer are criminally violating my children and I's Constitutional rights." Mother identified her concerns that Father had physically abused K.H., stating that K.H. told her that Father "grabbed him by the neck and took him out of the back of the car on the freeway[,]" and that S.S.'s ex-husband said K.H. "was tied to a chair[] . . .[and had] his fingers twisted when they were jammed." S.S. and Father disputed this. S.S. testified she was concerned for the children's safety in Mother's care because all three children were medicated for depression, K.H. would "beat up" E.H., and M.H. was overprescribed her inhaler.

¶13         Both Mother and S.S. testified Father frequently wore a body camera and recorded his interactions with the children. This particularly strained Father's relationship with K.H., who "made it very vocal that he doesn't like it and so, that tend[ed] to frustrate him more."

¶14         Father spent much of the trial attacking the November 2020 Ruling, alleging fraud by DCS, Mother, and S.S.'s ex-husband. Father argued this prior fraud "was imported" into this case and "was never corrected." He alleged he did not know he could exercise supervised parenting time, but also maintained he did not have to follow court orders he viewed as illegitimate, including the November 2020 Ruling and later restrictions on his parenting time.

**D.    The Superior Court Grants Mother Sole Legal Decision-Making for All Three Children in New Permanent Orders.**

¶15        The superior court issued its 2024 Ruling, granting Mother sole legal decision-making authority for all three children and granting Father supervised parenting time.  The court again expressed concern about Father's mental health, its negative impact on the children, and the potential harm to the children if he was granted unsupervised parenting time.  The court affirmed all orders not expressly modified, ordered Father to pay monthly child support, and granted Mother attorneys' fees and costs.

¶16        Father timely appealed the 2024 Ruling.  We have jurisdiction.  Ariz. Const., art. 6, § 9; A.R.S. §§ 12-120.21(A)(1), -2101(A)(1).

## DISCUSSION

**I.    Father's Briefs Do Not Comply with ARCAP 11 or 13, but We Exercise Our Discretion to Address the Merits of Father's Claims.**

**A.    Father Did Not Timely File Transcripts as Required by ARCAP 11.**

¶17        Mother argues that because Father did not file a copy of the trial transcript with his appeal, we should infer that the transcript supports the superior court's findings.  While Father eventually filed the transcripts on November 13, 2024, they were not available to Mother when her answering brief was due on August 26, 2024.

¶18        ARCAP 11 provides that if, on appeal, an appellant will argue that a judgment is unsupported by, or contrary to, the evidence, "the appellant must include in the record transcripts of all proceedings containing evidence relevant to that judgment, finding or conclusion."  ARCAP 11(c)(1)(B).  The appellant must order the official transcripts "within 10 days after filing the notice of appeal, or within 10 days after entry of an order disposing of the last timely remaining motion under Rule 9(e), whichever is later."  ARCAP 11(c)(2).

¶19        The 2024 Ruling was issued on January 19.  Father filed his timely notice of appeal on January 28, 2024.  *See* ARCAP 9(a).  Under ARCAP 11(c)(2), Father should have ordered the transcripts by February 9, 2024, but Father did not file his Notice of Transcript Order and Request for Reimbursement until October 21, 2024.  This far exceeded ARCAP 11's 10-day deadline and thus was untimely.

### B.    Father's Opening Brief Violates ARCAP 13.

¶20    Mother argues we must strike Father's opening brief because it does not comply with ARCAP 13's requirements that factual and legal contentions be supported by citations to legal authority and appropriate references to the record.  *See* ARCAP 13(a).  Mother is right that factual and legal authority in Father's opening brief are "virtually non-existent."

### C.    We Exercise Our Discretion to Reach the Merits of Father's Appeal.

¶21    These violations of ARCAP justify affirming the 2024 Ruling. *See* ARCAP 25.  But because this case affects the best interests of minor children, we decline to strike Father's brief for its deficiencies and exercise our discretion to address the merits of Father's arguments.  *See State v. Smith*, 203 Ariz. 75, 79 ¶ 12 (2002) (exercising discretion to address waived arguments); *Hoffman v. Hoffman*, 4 Ariz. App. 83, 85 (1966) (stating waiver is discretionary where minor children are involved); *accord Hays v. Gama*, 205 Ariz. 99, 102 ¶ 18 (2003) ("We have repeatedly stressed that the child's best interest is paramount in custody determinations.") (citing cases).

## II.    The Superior Court Did Not Abuse Its Discretion in the 2024 Ruling.

¶22    Father argues the court:  (1) did not make sufficient best interests findings and that the record does not support the findings it made; (2) failed to consider Father's fraud allegations; (3) violated Father's constitutional rights by restricting his parenting time; (4) was biased; and (5) made many errors in its November 2020 Ruling and other orders.  We are unpersuaded.

¶23    We affirm a superior court's decision regarding legal decision-making and parenting time for an abuse of discretion.  *See Nold v. Nold*, 232 Ariz. 270, 273 ¶ 11 (App. 2013).  There is an abuse of discretion where the record, viewed in the light most favorable to upholding the court's decision, is clearly erroneous and devoid of competent evidence. *Engstrom v. McCarthy*, 243 Ariz. 469, 471 ¶ 4 (App. 2018); *Hurd v. Hurd*, 223 Ariz. 48, 52 ¶ 19 (App. 2009).  The court lacks discretion to misapply the law to "reach[] a discretionary conclusion."  *Engstrom*, 243 Ariz. at 471 ¶ 4. We will not reweigh the evidence or determine credibility on appeal.  *See Hurd*, 223 Ariz. at 52 ¶ 16.

**A.     The Superior Court Made Sufficient Best Interests Findings, Which Are Supported by the Record.**

¶24     Father argues the superior court did not make sufficient best interests findings under A.R.S. § 25-403 and -411(J) because the court did not specifically find danger to the children or Father's unfitness.  The opening brief states, "[t]he only reason the [c]ourt gives for restricting Father's parenting time [r]ights is that of an adverse inference for Father's refusal to take a psychiatric evaluation[.]"  We disagree.

¶25     When considering a modification to legal decision-making and parenting time, the court must "consider all factors that are relevant to the child's physical and emotional well-being[.]"  A.R.S. § 25-403(A).  When legal decision-making or parenting time is contested, the court must "make specific findings on the record about all relevant factors and the reasons for which the decision is in the best interests of the child."  A.R.S. § 25-403(B).  Failure to make these findings on the record is an abuse of discretion.  *Nold*, 232 Ariz. at 273 ¶ 11.

¶26     The superior court made adequate findings here. The 2024 Ruling found that awarding Mother sole legal decision-making authority was in the children's best interests.  In support of this conclusion, the court walked through each of the best interests factors.  Most notably, it found that Mother had a good relationship with the children while "Father's relationship with all of the children [was] strained[,]" and that Father had not exercised parenting time since February 2021 and had not spoken on the phone with the children since "early 2021-22."  The court discussed the children's relationships with Mother's new husband and Mother's extended family in the state, as well as the children's positive adjustment to school and their involvement in extracurricular activities while in Mother's care.  The court described how Father's attendance at these events caused anxiety for the children.  The court noted the mental health struggles of Mother, Father, and the children, but concluded Mother's mental health would not inhibit her ability to care for the children, unlike its concerns about Father's mental health.  It found Mother was more likely to allow the children frequent and meaningful contact with Father.  It also found that Father filed several frivolous pleadings.  Finally, the court found that there were no domestic violence allegations since the last orders and that no domestic violence occurred, but "physical abuse may have occurred between Father and [K.H.]"

¶27     Because Mother and Father did not reach a parenting time agreement, the court also considered the A.R.S. § 25-403.01 factors to find

7

that "Father has acted unreasonably . . . by filing frivolous pleadings, focusing on relitigating the past, refusing to complete a psychological evaluation, and failing to visit his children . . . and instead attends the children's sporting events with a body camera and posters." It concluded that "Father may be influenced by factors unrelated to the children's best interests," that Father's behavior made it unlikely the parties could cooperate in decision-making, and that Father's mental health made it unclear whether joint decision-making would be possible.

¶28 Thus, the court sufficiently engaged with the best interests factors and made findings supported by the record. Father's challenge to the findings invites us to reweigh evidence and assess witness credibility, which we will not do. *See Gutierrez v. Gutierrez*, 193 Ariz. 343, 347-48 ¶ 13 (App. 1998); *Hurd*, 223 Ariz. at 52 ¶ 16. Because competent evidence supports the decision, the superior court did not abuse its discretion in concluding that awarding Mother sole legal decision-making would be in the children's best interests. *See Engstrom*, 243 Ariz. at 471 ¶ 4.

**B.     The Superior Court Did Not Abuse Its Discretion in Not Admitting the Entire 1,600-Page DCS Record, and Its Exclusion Did Not Violate Father's Due Process or Equal Protection Rights.**

¶29 Father argues the superior court abused its discretion when it did not admit the entire 1,600-page DCS record into evidence. We review "the admissibility of evidence for an abuse of discretion." *State v. Slover*, 220 Ariz. 239, 244-45 ¶ 15 (App. 2009).

¶30 The purpose of the November 2023 trial was to consider changed circumstances since the November 2020 final orders. At trial, the court allowed Father to question S.S. about a DCS report related to a May 2019 incident between Father and K.H. in which K.H. was allegedly "pulled out of the car by his neck." Father then moved to admit the entire 1,600-page DCS file, in which the 1-page report was located, into evidence. But Father did not explain why the remaining 1,599 pages would provide evidence of changed circumstances affecting the children's best interests. Thus, the court did not abuse its discretion in not admitting the entire DCS record.

**C.     The Superior Court Did Not Err in Omitting to Find Fraud By Mother.**

¶31 Father argues in his briefing and in a supplemental request for judicial notice that the court erred in not finding Mother committed

fraud. At trial, Father suggested Mother and S.S.'s ex-husband filed fraudulent reports with DCS in a related dependency case, which "permeat[ed] through" to this case from the November 2020 Ruling. But any fraud ended before the 2024 Ruling, as Father admitted that Mother "stopped false reporting to DCS." As such, reasonable evidence supports the court not finding any fraud by Mother. *See Smith v. Smith*, 253 Ariz. 43, 46 ¶ 9 (App. 2022) (holding that this Court "will affirm findings if reasonable evidence supports them[]").

**D. The Restrictions on Father's Parenting Time Do Not Violate His Constitutional Rights.**

**¶32** Father argues the 2024 Ruling violates his constitutional rights because "state interference with parental rights must meet strict scrutiny[.]" The Arizona Supreme Court has recognized that while A.R.S. § 1-601 provides that fundamental parenting rights can only be infringed where there is a compelling governmental interest, this requirement is satisfied where the limitation is "necessary to prevent the child's physical endangerment or significant emotional impairment." *Paul E. v. Courtney F.*, 246 Ariz. 388, 395 ¶ 23 (2019).

**¶33** Here, the court found that "Father's parenting time must be supervised to protect the children's physical, mental, moral, or emotional health." It based this finding on Father's lack of contact with the children in "over two years other than appearing unannounced at the children's public events, where he behaves erratically and causes the children distress[,]" Father's refusal to participate in a psychological evaluation, and concerns of physical abuse. Because the superior court found a compelling state interest that satisfied A.R.S. § 1-601(B), and competent evidence supports that finding, the court did not abuse its discretion or violate Father's constitutional right to parent. *See Engstrom*, 243 Ariz. at 471 ¶ 4.

**E. No Evidence Shows the Judge Was Biased.**

**¶34** Father challenges the 2024 Ruling as a violation of his constitutional rights because he alleges Judge Francis was biased. But a party challenging a judge's participation as biased "must set forth a specific basis for the claim of partiality and prove by a preponderance of the evidence that the judge is biased or prejudiced." *State v. Medina*, 193 Ariz. 504, 510 ¶ 11 (1999). Father presents no specific allegations of bias beyond disagreement with Judge Francis' rulings. He has therefore failed

to overcome the presumption that judges are "free of bias and prejudice." *State v. Rossi*, 154 Ariz. 245, 247 (1987).

> ### F. Father's Other Arguments Are Not Properly Before This Court.

**¶35** Father asserts that the November 2020 Ruling was procured by fraud and that his due process rights were violated in the related trial. But this case is a timely appeal from the 2024 Ruling. Father did not and cannot appeal the November 2020 Ruling; that is beyond the scope of this appeal. *See Lee v. Lee*, 133 Ariz. 118, 124 (App. 1982) (stating jurisdiction limited to matters specified in notice of appeal); *see also* ARCAP 9(a) (Notice of appeal must be filed within "30 days after entry of the judgment from which the appeal is taken[.]"). For the same reason, to the extent Father objects to evidentiary rulings preceding the November 2020 Ruling, these are beyond the scope of this appeal.

**¶36** Father questions the superior court's prior orders that he take a psychological evaluation. But the 2024 Ruling did not order Father to submit to a psychological evaluation. While acknowledging Father's non-compliance with prior psychological evaluation orders, the 2024 Ruling provided a plan to move Father from supervised parenting time to unsupervised parenting time that did not include a psychological examination. Unlike prior orders stating the court would not consider altering the parenting-time limitations until Father completed a psychological evaluation, the 2024 Ruling stated the court would not do so "until Father [could] demonstrate a secure and safe environment for supervised visitation[.]" The 2024 Ruling therefore modified the prior orders in regard to the psychological testing, and accordingly those orders were not affirmed. Because the order at issue here did not require Father to take a psychological evaluation, those arguments are outside the scope of this appeal. *See* ARCAP 8(c)(3), 9(a); *Lee*, 133 Ariz. at 124.

**¶37** To the extent Father raises various other statutory and/or constitutional challenges to the 2024 Ruling, he has not adequately developed them on appeal, and has thus waived them. *See* ARCAP 13(a)(7); *State v. Bolton*, 182 Ariz. 290, 297-98 (1989) ("Failure to argue a claim on appeal constitutes waiver of that claim.").

## CONCLUSION

¶**38**      For the foregoing reasons, we affirm. Subject to her compliance with ARCAP 21, we also grant Mother's request for her reasonable attorneys' fees and costs under A.R.S. § 25-324(A) and ARCAP 25.



AMY M. WOOD • Clerk of the Court
FILED:      JR